(No. 26622.—

CHARLES M. THOMSON, Trustee of the property of Chicago and Northwestern Railway Company, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(HERMAN E. STOLL, Defendant in Error.)

*Opinion filed September 25, 1942.*

WILLIAM H. KELLY, and WELDON A. DAYTON, (NELSON J. WILCOX, of counsel,) for plaintiff in error.

MARSHALL SOLBERG, and PAUL E. JOHNSON, for defendant in error.

Mr. Justice Smith delivered the opinion of the court:

This proceeding originated in an application, filed by defendant in error, with the Industrial Commission, for an award of compensation under section 8 of the Workmen's Compensation Act. (Ill. Rev. Stat. 1941, chap. 48, par. 145.) He sought compensation for temporary total disability, resulting from injuries suffered by him while employed by plaintiff in error.

From the facts shown by the record, it appears that Stoll entered the service of plaintiff in error, who is trustee of the properties of the Chicago and North Western Railway Company, in November, 1933, as a patrolman. With the exception of a lay-off in the winter of 1934-1935, due to a reduction of forces, he worked in that capacity until the evening of March 11, 1940. At that time he received the injuries for which compensation is claimed. As patrolman it was his duty to patrol the railroad right of way in his district, look out for fires, eject or arrest trespassers, examine and test seals on cars, (both interstate and intrastate) and protect the cars and their contents from thieves and trespassers. It was also his duty to inspect passing trains, (both interstate and intrastate,) for hot boxes and other defects, and observe the tracks for broken rails and obstructions. His duties were primarily those of a policeman. He worked under the direction of the captain of the railroad police.

On the day the injury occurred, Stoll reported for duty at the North avenue yard office about 5:20 P. M. He there received his orders to patrol the North avenue district until 5:00 A. M. the following morning. There were, at that time, both interstate and intrastate cars on the tracks in the North avenue yard. When he reported for duty, the day man, whom he relieved, directed his attention to a small pile of coal on the right of way near the south end of the Noble street viaduct. There is some testimony in the record tending to show that this coal had been taken from an inter-

state car, standing in the yards, but the point is wholly immaterial. It was in nowise involved in, or connected with, the injury. Stoll was performing no duty with reference to this coal, at or before the time he received the injury complained of. Stoll commenced work about 5:45 P. M. He started to walk towards Division street, which was one of the boundaries of the district to which he had been assigned for the night. He first examined a section shanty which he found in good order. He then proceeded on toward the Noble street viaduct. As he approached the viaduct he met a trespasser on the right of way. He asked him his business. The trespasser attempted to strike Stoll with a club or board but was disarmed. Stoll then placed him under arrest and started to take him to the station. When they passed the pile of coal the trespasser threw himself down on the coal. While Stoll was attempting to get him back on his feet, two other men came up and attacked Stoll. They beat and kicked him severely. They finally pushed him off of the viaduct. He fell twenty feet to the pavement below. Stoll finally got up and managed to get to the yard office, where he reported what had happened. He was then taken to the company dispensary for first aid, and from there to Passavant Hospital. His injuries, while serious, apparently resulted in no permanent disability.

There is no dispute as to the above facts, or as to the nature and extent of the injuries. After the application for adjustment of the claim was filed with the Industrial Commission, hearings were had before an arbitrator. The arbitrator made an award in which he found that both Stoll and his employer were subject to the provisions of the Compensation Act; that the injuries claimed arose out of and in the course of his employment, and constituted a compensable injury under that act; that the injuries received resulted in temporary total disability. Compensation was awarded at the rate of $17.60 per week for a period of 42-4/7 weeks. On review, the commission sustained the

findings of the arbitrator as to the applicability of the Compensation Act, but increased the period of payments from 42-4/7 weeks to 58 weeks. On *certiorari* the circuit court of Cook county, confirmed the decision of the commission.

The sole question here is whether Stoll, at the time of his injury, was comprehended within, and subject to, the provisions of the Federal Employers' Liability Act, as amended August 11, 1939. If he was, then the Illinois Workmen's Compensation Act has no application, and the Industrial Commission had no jurisdiction to entertain the application for adjustment of the claim, and the award of compensation was improper.

The decisive question is the effect of the 1939 amendment to the Federal Employers' Liability Act. To fully understand the purpose and effect of this amendment, it is necessary to review the history of the legislation on the subject.

The first Federal Employers' Liability Act was enacted June 11, 1906. (34 Stat. at L. 232.) By its terms it attempted to cover all employees who were employed by a common carrier, engaged in interstate commerce. The theory of that act was, that if the carrier was engaged in interstate commerce, it thereby subjected itself to federal regulation in all the aspects of its business. The validity of this theory was, however, denied by the United States Supreme Court, and the act was declared unconstitutional in the case of *Howard* v. *Illinois Central Railroad Co.* 207 U. S. 463, 52 L. ed. 297. It was held in that case, that as to that part of the business of a carrier which was wholly intrastate, neither the carrier nor its employees were subject to regulation by Congress. It was there said (page 498):

"The Act, then, being addressed to all common carriers engaged in interstate commerce, and imposing a liability upon them in favor of any of their employees, without qualification or restriction as to the business in which the carriers or their employees may be engaged at the time of

the injury, of necessity includes subjects wholly outside of the power of Congress to regulate commerce."

Following this decision, Congress passed the second Employers' Liability Act, April 22, 1908. (45 U. S. C. A. 51.) This act was limited in its effect to cases where the injuries were sustained while the employee was actually engaged in interstate commerce. The act read, "Every common carrier by railroad *while engaging in commerce between any of the several States or Territories* * * * shall be liable in damages to any person suffering injury *while he is employed, by such carrier, in such commerce,*" etc. (45 U. S. C. A. par. 51.) Its constitutionality was upheld by the Supreme Court in *Second Employers' Liability Cases,* 223 U. S. 1, 56 L. ed. 327. The court there said (page 51) : "The present act, unlike the one condemned in *Employers' Liability Cases,* 207 U. S. 463, deals only with the liability of a carrier engaged in interstate commerce for injuries sustained by its employees while engaged in such commerce. And this being so, it is not a valid objection that the act embraces instances where the causal negligence is that of an employee engaged in intrastate commerce; for such negligence, when operating injuriously upon an employee engaged in interstate commerce, has the same effect upon that commerce as if the negligent employee were also engaged therein."

Following this decision, the courts have uniformly tested every case, where the question of the application of the Federal Employers' Liability Act was involved, by determining whether or not at the time the injury was sustained the employee was engaged in interstate commerce. This inevitably led to many borderline decisions, and made it often difficult to determine whether the Federal or State law should apply. To remedy that situation, Congress enacted the amendment of 1939, by which the following language was added to the act of 1908:

"Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter." 45 U. S. C. A. par. 51.

Plaintiff in error contends that the effect of this amendment was to extend the act to include all employees of an interstate carrier, under the terms of the act, so long as any part of their duties is associated with interstate commerce. With this interpretation we cannot agree. Taken literally, it would mean that Congress, by arbitrarily defining any act as interstate commerce, could bring that act within the scope of Federal regulatory power. Congress cannot, under the guise of regulation of interstate commerce, exercise powers not intrusted to it by the constitution. *United States* v. *Ohio Oil Co.* 234 U. S. 548, 58 L. ed. 1459; *Carter* v. *Carter Coal Co.* 298 U. S. 238, 56 Sup. Ct. 855.

In recent years the powers of Congress to regulate industry, for the purpose of furthering interstate commerce, have been greatly extended by judicial construction. Although Chief Justice Marshall, in *Gibbons* v. *Ogden,* 9 Wheat 1, 196, 6 L. ed. 23, 70, defined the authority of Congress over interstate commerce as "plenary," and subject to "no limitations other than are prescribed in the constitution," nevertheless for many years it was generally conceded that the exercise of that authority was limited to the control of acts which, in themselves, actually constituted a part of interstate commerce.

Gradually, as the methods of business and commerce changed, it was recognized that many transactions which do not, in themselves, reach across State lines, are nevertheless so closely and inseparably interwoven with inter-

state operations as to substantially affect such commerce. From this, to the recognition of the power of Congress to regulate those businesses which substantially affect interstate commerce, was but a step, and the United States Supreme Court has taken that step. *National Labor Relations Board* v. *Jones & Laughlin Steel Corp.* 301 U. S. 1, 57 S. Ct. 615; *Board of Trade* v. *Olsen,* 262 U. S. 1, 43 S. Ct. 470, 67 L. ed. 839.

The extension of Federal control has not, however, destroyed the constitutional limitations on the power of Congress. Notwithstanding the modern trend has been to give to all constitutional limitations a flexibility which renders restrictions practically innocuous, the constitution still exists. It is binding on this court as well as on the Congress of the United States. Congress is still powerless to regulate matters which are wholly intrastate. As said in the *Jones & Laughlin case, supra,* (page 30), "The authority of the federal government may not be pushed to such an extreme as to destroy the distinction, which the commerce clause itself establishes, between commerce 'among the several states' and the internal concerns of a state. That distinction between what is national and what is local in the activities of commerce is vital to the maintenance of our federal system."

What, then, is the effect of the 1939 amendment? It seems clear that until *Howard* v. *Illinois Central Railroad Co. supra,* and the *Jones & Laughlin case, supra,* are overruled, the amendment in so far as it attempts to include the employees of interstate carriers at all times, regardless of whether or not their immediate employment is in interstate commerce or affects such commerce, is beyond the powers of Congress. On the other hand, the provisions of the 1939 amendment which broaden the application of the act to include those employees whose employment "in any way directly or closely and substantially" affects interstate

commerce, are within the powers of Congress and constitute a valid enactment.

Viewed from this basis, the only effect of the 1939 amendment is to change the test which must be applied to determine whether or not the Federal Employers' Liability Act is applicable. Prior to that amendment, the test has been whether the employee, at the time of the accident, was engaged in interstate commerce, or in work so closely related to it as to become a part of it. (*Thomson* v. *Industrial Com.* 372 Ill. 258.) Under the amendment, the test must be whether the activity in which the employee is engaged at the time of the accident, directly or closely and substantially affects interstate commerce.

Applying this test to the instant case, the work in which the employee was engaged, at the time of the injury, did not, "directly or closely and substantially" affect interstate commerce. Consequently the Federal Employers' Liability Act does not apply. Petitioner cites numerous cases from other States (but no federal cases) to the effect that officers protecting railroad property, or policing tracks used by interstate railroads, are engaged in interstate commerce. This is directly contrary to the decisions of this court. *Chicago and Alton Railroad Co.* v. *Industrial Com.* 290 Ill. 599, and *Chicago, Rock Island and Pacific Railway Co.* v. *Industrial Board,* 273 id. 528.

Defendant in error here was employed to patrol and protect his employer's property. The fact that he was employed by an interstate carrier does not change the local nature of his employment, or subject all of his activities to congressional regulation. To so hold would emasculate the constitutional limitations inherent in the grant of power, as well as in the explicit reservations of the tenth amendment.

At the time of the injury, Stoll was engaged in the prevention of a violation of the law of Illinois—a simple trespass on the right of way. The fact that interstate com-

merce might be moved over the tracks on that right of way, did not lend an interstate aspect to his acts or place him in interstate commerce. He was primarily concerned with a problem of a local trespass, not interstate commerce. We do not see how it can be said that his attempt to eject a trespasser, affected, except in a remote and incalculable degree, interstate commerce. It certainly did not closely and substantially affect such commerce, within the language of the amendment. The circuit court correctly held that the nature of the employment at the time of the injury was such that both Stoll and his employer were subject to the provisions of the Workmen's Compensation Act, and that he was entitled to its benefits.

The judgment of the circuit court confirming the decision of the Industrial Commission is affirmed.

*Judgment affirmed.*