[Civ. No. 17190. Second Dist., Div. One. Apr. 27, 1950.]

BURLEY BLUNK, Respondent, v. THE ATCHISON, TO-
PEKA AND SANTA FE RAILWAY COMPANY (a
Corporation), Appellant.

Robert W. Walker and J. H. Cummins for Appellant.

Warner, Peracca & Magana for Respondent.

WHITE, P. J.—Defendant railway company appeals from a judgment against it entered upon the verdict of a jury in an action for personal injuries brought by an employee under the Federal Employers' Liability Act (45 U.S.C., § 51 et seq.).

Defendant maintained a "change room" in a building located near the roundhouse in its yards at Winslow, Arizona. Plaintiff, a fireman, was injured in the change room when he went there preparatory to changing his clothes in order to go on duty. He kept his working clothes in a metal grip, and had placed the grip on a rack in the change room at approximately eye level. When he reached for the grip to take it down from the rack, it rolled toward him more easily and suddenly than he had anticipated and with unexpected weight, causing him to step back against a bench and fall against a table, injuring his back. Upon opening his grip he found therein a diesel brake shoe, estimated to weigh approximately 50 pounds. On the rack where his grip had been, he found a glass tube, described as a boiler "water glass," something less than an inch in diameter and from 12 to 16 inches long. Plaintiff's injuries resulted from the fact that the unexpectedly heavy bag, moving easily on the glass as a roller, threw him off balance. He failed to regain his balance because in stepping back he struck a bench, with the result that he fell against a table.

Under the Federal Employers' Liability Act, there can be no recovery in the absence of a showing of negligence on the part of the employer. Unless the facts just stated, together with other evidence to which we will presently refer, warrant an inference of negligence on the part of the railway management or negligence of an employee legally imputable to the employer, the judgment herein must be reversed.

It is the position of appellant that the railway is not liable for an injury occasioned by sportive acts or horseplay of fellow employees not in the scope and course of their employment; that there was no evidence that the railway had notice that its employees were engaging in horseplay; that brake shoes and water glasses are not inherently dangerous articles which the master should keep in a safe place; and that consequently any finding of negligence on the part of the railway would be based on the sheerest speculation. We are in accord with appellant's contentions.

The obvious conclusion from the facts related is that the plaintiff was the victim of a practical joke, perpetrated by either a visitor to the change room or by a fellow employee—

in all probability by the latter. The placing of the brake shoe in the bag and the roller beneath it was a deliberate act. The practical joker was guilty of negligence, it is true, but it was not negligence for which the employer is responsible. It is, we think, beyond the bounds of reasonable inference to assume that the placing of the objects in and under the bag was done within the course and scope of an employee's duties.

The evidence and the theory upon which respondent urges that the verdict should be upheld are contained in the following argument taken from his brief:

"The evidence presented several factors from which a jury could, and in this case did, reasonably infer that the railroad had been negligent and that said negligence proximately caused plaintiff's injuries. There was substantial evidence to the effect that debris and 'junk of all sort' was littered in and about the change room before and during the period when the accident occurred. Mr. Blunk testified that there were tie plates, railroad spikes, knuckle pins, broken knuckles and brake-shoes in the change room for several months prior to the accident. Indeed, he testified that for some time a brake-shoe had been used as a prop for the door to the change room. Ross Hazlett, Chairman of the Safety Committee for the employees, also testified that he had seen various items such as those mentioned by plaintiff littered about the change room for several months, and had complained to the company of these conditions as Safety Chairman. Corroborating the testimony of Blunk and Hazlett, one Santa Fe witness, J. R. Kenney, also testified that he had seen similar objects about the change room and that he had also seen a box-car brake-shoe used as a door prop.

"There was also considerable testimony showing the employees who used the change room had a duty to keep the premises clean. As plaintiff stated, there was a sign in the change room, 'Please Keep This Place Clean,' and the round-house foreman had reprimanded the men for not keeping the room cleaner. Counsel respectfully submits that the jury could reasonably infer that the employees, in attempting to keep the room clean in accordance with their duties, would indulge in such practices as 'sweeping under the rug.' In short, one could reasonably infer that persons using that room would take objects off the floor and place them in any available receptacle. The fact that an employee would carelessly and negligently place a brake-shoe or any other stray

object in someone's grip in order to 'get it out of the way' merely accentuates that employee's failure to meet the standards of ordinary care. It should be noted that there was a junk pile for the disposal of brake-shoes, knuckles and other objects, but that this junk pile was over 250 yards away from the change room, thus giving rise to a reasonable inference that certain employees put objects in the nearest convenient place rather than carry them that long distance.

"That the brake-shoe and glass tube were put there by careless employees rather than some outside person was clearly indicated by the fact that the change room was inaccessible to anyone other than Santa Fe employees. In fact, the room was specifically intended for the use of enginemen only.

"Also showing that the entire accident was of a railroad character and specifically chargeable to the negligence of the Santa Fe railroad, is the fact that the brake-shoe and the tube were objects used on railroad engines and not foreign objects that would have been brought from the outside by persons not authorized to use the change room.

"Considering all these facts together—the untidy condition of the change room for long periods of time, the duty of employees to clean the room, the inaccessibility of the room to outsiders, and the railroad character of the brake-shoe and glass tube—it was reasonable for the jury to infer that some employee or employees carelessly put the brake-shoe in Mr. Blunk's grip rather than carry it the distance of 250 yards to the junk pile where it should have been placed; and it was just as reasonable for them to infer that the glass tube had been left on top of the lockers in a similarly careless and lazy manner."

An appellate court must, of course, view the evidence in the light most favorable to the prevailing party, and every reasonable inference must be indulged in to support the verdict. But counsel's argument, putting the plaintiff's case as strongly as the evidence permits, is not persuasive. The inference that the brake shoe was placed in the grip and the glass tube under the grip in the performance of a duty arising out of or in the scope of the employment simply cannot be accepted. Assuming, as we must, that brake shoes and similar railroad equipment littered the change room from time to time, if this constituted negligence on the part of the railroad it was not the negligence which proximately caused the accident. The proximate cause was the deliberate placing of the brake shoe and tube as they were found. Even assuming,

from the presence of the sign admonishing employees to keep the place clean, the existence of a duty on their part so to do, it cannot reasonably be inferred therefrom that an employee, in performing such duty, went to the trouble of placing a 50-pound piece of iron in a grip on a high shelf.

■ The duty of the railroad to provide a safe place to · work does not extend to protection of the employee against horseplay of fellow employees outside the scope of their employment. (*Davis* v. *Green,* 260 U.S. 349 [43 S.Ct. 123, 67 L.Ed. 299] ; *Atlantic Coast Line R. Co.* v. *Southwell,* 275 U.S. 64 [48 S.Ct. 25, 72 L.Ed. 157] ; *Lavender* v. *Illinois Central R. Co.* (1949), 358 Mo. 1160 [219 S.W.2d 353] ; *Sheaf* v. *Minneapolis, St. P. & S.S. M.R. Co.*, 162 F.2d 110 ; *Griffin* v. *Baltimore & O. R. Co.*, 98 W.Va. 168 [126 S.E. 571] ; *Reeve* v. *Northern Pac. Ry. Co.*, 82 Wash. 268 [144 P. 63] ; *Goupiel* v. *Grand Trunk Ry. Co.*, 96 Vt. 191 [118 A. 586].) ■ The question of the railroad's tolerating horseplay or negligently employing persons of known propensities is not here involved. The court properly instructed the jury that brake shoes or boiler water glasses were not inherently dangerous articles which the master should keep in a safe place, and there was no duty on the part of the railroad to anticipate that another employee would use such articles to rig a booby-trap for a fellow employee. Obviously, a person desiring to play such a prank could find suitable objects almost anywhere in the vicinity of the change room or the roundhouse, or for that matter, almost anywhere. Bricks or rocks could be, and have been, used for the purpose.

It must be concluded that as a matter of law plaintiff failed to present probative facts from which the jury could reasonably infer negligence and proximate cause. The present verdict can be upheld only by resort to speculation. (*Galloway* v. *United States*, 319 U.S. 372, 395 [63 S.Ct. 1077, 87 L.Ed. 1458] ; *Tennant* v. *Peoria & Pekin Union R. Co.*, 321 U.S. 29 [64 S.Ct. 409, 88 L.Ed. 520] ; *Northwestern Pac. R. Co.* v. *Bobo,* 290 U.S. 499 [54 S.Ct. 263, 78 L.Ed. 462].)

■ The courts of this state have liberally construed workmen's compensation statutes to the end that their beneficent purposes might be fully realized. But in so doing the courts may not usurp the function of the legislative authors, in this case the Congress, and under the guise of liberal construction impose a liability not based upon the fair and reasonable meaning of the word "negligence" and the usual standards

of proof required in civil cases. We may not and should not transform liability for negligence into liability as an insurer. Pertinent to the situation with which we are here confronted is the following language taken from *Eckenrode* v. *Pennsylvania R. Co.*, (C.C.A. 3d) 164 F.2d 996 (affirmed 335 U.S. 329 [69 S.Ct. 91, 93 L.Ed. 41]): "Any Federal Judge who sees these railroad accident cases come in and go out of the courts must be troubled by the unsatisfactory social results obtained. Some claimants go out with very large verdicts. Others go out with nothing. Yet in each case the injury has come as part of the business of train movement and the disastrous consequences upon the victim or his family are equally heavy. But so long as the law is that the defendant must be negligent for the plaintiff to recover for his injuries it is our responsibility to apply the negligence test honestly and not to pretend that there is negligence when it does not exist. It does not exist in this case."

The conclusion arrived at makes it unnecessary to consider the asserted error in the giving of an instruction.

The judgment is reversed with directions to enter judgment for the defendant.

Doran, J., and Drapeau, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 22, 1950. Carter, J., voted for a hearing.