[S. F. No. 18478. In Bank. July 31, 1952.]

OVE E. ERICKSEN, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

Dunne, Dunne & Phelps, R. Mitchell S. Boyd and A. B. Dunne for Appellant.

Leo Fried and William P. Callahan for Respondent.

SHENK, J.—The defendant Southern Pacific Company appeals from a judgment on a verdict awarding the plaintiff Ove E. Ericksen $18,000 damages for personal injuries in an action under the Federal Employers' Liability Act (45

U.S.C.A. § 51) for failure to provide the plaintiff with a safe place to work.

The plaintiff was employed by the defendant railroad company as a lumber inspector. It was his duty to inspect lumber on the premises of various lumber companies in Washington and Oregon and accept or reject it for shipment to the defendant. Railroad ties which he inspected would be shipped to various states. Some would be used for the building of new tracks and some for the repair of old. Some would be first sent to California for creosoting; others would be immediately used in an untreated state.

On June 17, 1947, the plaintiff was inspecting ties on the loading dock of an Oregon lumber company. The ties that he approved were being loaded in defendant's freight car standing alongside the dock. The ties being inspected were so piled that the ends of some were even with the edge of the dock while others extended beyond it. The plaintiff stood on the dock beside the pile. He then leaned over the edge in order to inspect the ends, standing on his right foot, holding his right hand against the pile, with his left foot in midair. He attempted to return to an upright position. While still off balance he set his left foot on the dock, touching some foreign object on the dock, possibly a pebble or piece of bark. His foot twisted and he fell, injuring his ankle.

The plaintiff testified that on other docks it was customary to keep the lumber away from the edge of the dock so that it could be readily checked. He further declared that he had almost fallen in making a previous inspection at this dock and had complained to his superior that not enough room was left at this particular location.

The applicability of the Federal Employers' Liability Act is brought into question. It provides:

"Every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

"Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and

substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter." (45 U.S.C.A. § 51.)

It is unnecessary to discuss the nature of the defendant employer's activities. ■ When the employee's duties are shown to have had the required effect on interstate commerce he is "deemed" to have been employed by a carrier engaged in that commerce. The decision in *Howard* v. *Illinois C. R. Co.* and *Brooks* v. *Southern Pac. Co.*, 207 U.S. 463 [28 S.Ct. 141, 52 L.Ed. 297], casts no doubt on the constitutionality of such a rule A similar statute was there held unconstitutional because it failed to require that the activities of either the employee or the employer affect interstate commerce. Such a requirement is clearly a part of the present statute as to the duties of the employee. This rule is designed, in part, to eliminate the necessity of determining whether an employee was engaged in interstate commerce at the moment of his injury. (*Southern Pac. Co.* v. *Industrial Acc. Com.*, 19 Cal.2d 271 [120 P.2d 880].) But there is no indication that this was intended to be its sole effect.

■ The defendant contends that the act does not apply to the plaintiff because he is not a "railroader" exposed to the risks peculiar to railroading. The act furnishes a broader definition of those eligible to its benefits. It is made applicable to any employee whose duties further interstate commerce "or in any way directly or closely and substantially" affect such commerce. (45 U.S.C.A. § 51.)

No decision relied upon by the defendant which has excluded an employee from coverage under the act in its present form deals with the question whether one performing the particular type of work done by the plaintiff falls within this definition. None suggests a test of any greater precision or ease of application to the present case than the words of the statute itself. In *Holl* v. *Southern Pac. Co.*, 71 F.Supp. 21, 24, employees who have been held covered by the act were distinguished from those not entitled to its protection on the ground that ". . . each was furthering, i.e., promoting, or helping along, present or future interstate commerce." In *Thomson* v. *Industrial Com.*, 380 Ill. 386, 393 [44 N.E.2d 19], the court similarly did no more than rephrase the words of the statute by saying that ". . . the test must be whether

the activity in which the employee is engaged at the time of the accident, directly or closely and substantially affects interstate commerce." (See, also, *Lawrence* v. *Rutland R. Co.*, 112 Vt. 523, 526 [28 A.2d 488, 143 A.L.R. 476].)

■ It has been held that work on new tracks not yet in service is not covered by the act (*Moser* v. *Union Pac. R. Co.*, 65 Idaho 479 [147 P.2d 336, 153 A.L.R. 341]). The ties inspected by the plaintiff were not destined solely for such a use. Some were immediately transported across state lines and placed in tracks carrying interstate commerce, others were placed in such tracks after being taken to another state for creosoting, and the plaintiff himself crossed state lines in the performance of his services. It is reasonable to conclude that his duties satisfy the statutory requirement that they be in furtherance of interstate commerce.

■ It is argued on behalf of the defendant that negligence on its part was not established. It may be assumed that the jury could have concluded that the premises were unsafe only because of the presence of a foreign object on the dock and that the exercise of reasonable care did not require the defendant to prevent the existence of such a condition. That conclusion is not compelled as a matter of law. The question was one for the jury to determine.

■ Under the evidence the jury was entitled to conclude that the plaintiff was required to perform the duties of a tie inspector in a place where the defendant knew that there was danger of a fall because of the inconvenient location of the ties; that if the defendant had been exercising reasonable care to provide the plaintiff with a safe place to work it would not have required him to work there; that the inconvenient location of the ties was the cause of the plaintiff's injury since it forced him to assume an awkward, off-balance position likely to result in a fall; and that the defendant therefore breached his duty to the plaintiff to furnish a safe place in which to work.

■ The plaintiff's knowledge of the unsafe nature of the premises does not relieve the defendant of liability. Since 1939 the defense of assumption of risk has been barred under the act. (45 U.S.C.A. § 54.)* No subsequent decision has

*45 U.S.C.A. § 54: ''That in any action brought against any common carrier under or by virtue of any of the provisions of this chapter to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where such injury or death resulted in whole or

been cited which as a matter of law relieves an employer from liability for injuries due to dangers known to the employer simply because those dangers were also known to the employee.

■ The defendant asserts that since it did not own the premises it had no control over them and is therefore not liable for the injury sustained. The case of *Lang* v. *Lilley & Thurston Co.*, 20 Cal.App. 223, 230 [128 P. 1028], is relied on. There it was said that, "The principle underlying the decisions relating to the duty of the employer to furnish a safe place in which the employee is put to work is, that the employer cannot be justly charged with negligence as to matters over which he has no control." (See, also, *Thompson* v. *Atchison, T. & S. F. Ry. Co.*, 96 Cal.App.2d 974, 977 [217 P.2d 45].) It is argued that lack of direct control of the premises freed the defendant from responsibility no matter how unsafe it knows a particular location to be so long as its employees are aware of the danger.

The defendant's argument is answered by *Terminal R. Assn. of St. Louis* v. *Fitzjohn*, 165 F.2d 473, 476-477. In that case the defendant employer had furnished a switching crew which was operating a third party's switch engine on that party's premises over tracks constructed, maintained, and owned by that party. The premises were unsafe because, as the plaintiff switching crew foreman knew, light standards attached to a cement ramp wall were so close to a track that there was insufficient clearance to permit a trainman to ride the side ladder of a freight car past that point. This lack of clearance resulted in injury to the plaintiff as he rode by while clinging to the side of a car. The court affirmed a judgment for the plaintiff and held that the absence of ownership or control of the premises by the employer did not absolve it from liability for their unsafe condition.

No distinction may be drawn between the present problem and the Terminal case on the ground that there the employer had taken over control of the third party's premises for the conduct of the employer's business or that the third party furnished the instrumentalities. In neither case did the employer by virtue of the task it required the employee to per-

in part from the negligence of any of the officers, agents, or employees of such carrier; and no employee shall be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.''

form acquire control over that portion of the premises which made them an unsafe place in which to work. There is no indication that the Terminal Railroad Association had control over the location of the cement wall and light standards. The plaintiff here could not avoid the dangerous situation. He was required by the employer to work on or near the stock piles which constituted the dangerous condition.

The question therefore is whether the defendant is liable under the act when it knowingly required the plaintiff to work on unsafe premises of a third party and the employee also knew of the danger. ▉ State court decisions in applying common law principles are not controlling in the presence of a clear and plain duty under the act. It may be assumed that the common law nonliability doctrine in the absence of direct control applies where the employer has no notice or knowledge of unsafety or danger. ▉ But a conclusion of nonliability under the act where the employer requires the employee to work on premises known by the employer to be unsafe would amount to disapproval of the authorities which have recognized liability in such cases. No exception is made when the employee also knows of the unsafe condition but has no alternative except to work in the place of danger. ▉ The benefits of the act are not to be withheld in contravention of the plain intent of the act and contrary to its application in other cases. To do so would be to permit employers, otherwise subject to the act, with impunity to require their employees to work in places of known danger, so long as the unsafe premises are not under the employer's direct control. ▉ In cases of known dangerous premises belonging to the third party, the absence of direct control does not absolve the defendant from liability under the act.

It is contended that the verdict is excessive in the light of alleged contributory negligence and because of asserted passion and prejudice on the part of the jury. The act provides that while contributory negligence is not a bar to recovery, awards must be diminished in proportion to the contributory negligence of the plaintiff. (45 U.S.C.A. § 53.) Reappraisal of the amount of the verdict on the basis of this provision may not be made inasmuch as it was not established as a matter of law that the plaintiff was guilty of contributory negligence. ▉ It was for the jury to determine whether the plaintiff's manner of inspecting ties constituted negligence on his part.

■ In other respects the facts do not indicate that the verdict was excessive. The plaintiff's loss of wages during the estimated period of disability was shown to be approximately $3,000. The defendant argues that the remaining $15,000 represents compensation for pain and suffering and that this is an unreasonable appraisal of a partial disability due to the limitation of the lateral motion in the ankle of a 64-year-old man whose life expectancy was estimated to be approximately 14 years. The injury consisted of a crushing fracture of the heel bone. A closed reduction with pin traction was performed in June, 1947, a week after the accident. The plaintiff remained in bed in traction for over a month. He left the hospital for several weeks in August returning five times in the following six months and spending a total of 20 days in the hospital. On returning to work in March he experienced "throbbing pain night and day" and was forced to use a cane. In November, 1948, his ankle became so sore that he was unable to work for a month and he again received hospital treatment. In March, 1950, a triple arthrodesis was performed to relieve the pain from which he had been suffering for two years. The three joints beneath the astragalus were fused into a single joint by the operation, destroying the side motion of the foot. There is a 25 per cent limitation on the up and down motion of the foot, and a 50 per cent limitation in turning the foot inward and outward. It was estimated at the time of the trial that the plaintiff would be disabled for about six months after this operation. Although the operation may eliminate the pain, the evidence shows that the plaintiff will have difficulty in walking on uneven ground and will have to wear special shoes.

The claim that the verdict was excessive was passed upon and rejected by the trial court on the motion for a new trial. The amount of damages fixed by the jury and thereafter approved by the trial court will not be disturbed on appeal unless the evidence shows that the award is so disporportionate to any reasonable limit of compensation as to indicate that it was the result of passion, prejudice, or corruption on the part of the triers of the facts. (*Drotleff* v. *Renshaw,* 34 Cal.2d 176, 180 [208 P.2d 969].) There is no such showing.

The judgment is affirmed.

Gibson, C. J., Carter, J., and Traynor, J., concurred.

EDMONDS, J.—The affirmance of the judgment in favor of Ericksen is based upon the assumption that he was injured

upon unsafe premises provided by Southern Pacific Company. This conclusion can be reached only by misinterpreting evidence which is virtually without conflict. Moreover, the decision improperly expands the scope of the Federal Employers' Liability Act by imposing liability without fault when the employee is assigned to duties upon the premises of a third party. This construction of the statute is not justified by its terms and is directly contrary to all of the decisions of the federal courts.

The most favorable inference for Ericksen which can be drawn from the evidence is that Southern Pacific required him to go upon another's premises after being notified that, in the past, ties had been placed thereon in a dangerous manner. The record does not show that the premises were dangerous, nor an injury resulting from any defect in the loading dock. The evidence is undisputed that Cheney Lumber Company, not Southern Pacific, provided Ericksen with the place to work and exercised absolute control over its employees who placed the ties on the loading dock. The jury could have found from the evidence that Ericksen's injuries were caused by the negligent operation of the premises, but any wrongful conduct was that of the lumber company or its agents, not of Southern Pacific.

It is now said that the negligence of the lumber company, which Southern Pacific could do nothing to avoid, constitutes a breach of Southern Pacific's duty to Ericksen. But there is no holding that Southern Pacific was negligent and that its negligence was the cause of Ericksen's injury and the record would support no such conclusion. Under these circumstances, the only way in which the judgment could be affirmed is by applying the act as if it were a compensation statute imposing liability without fault and making the employer the insurer of its employee's safety.

Under the rules stated by the majority, the railroad would be responsible in damages to its employee for an accident upon a public thoroughfare caused by a negligent automobile driver if the employee were engaged in his employer's business. This is said to be the "plain intent of the act" which imposes liability for injury "resulting in whole or in part from the *negligence* of any of the officers, agents, or employees *of such carrier*, or by reason of any defect, or insufficiency, *due to its negligence,* in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." (45 U.S.C.A. § 51, emphasis added.)

In proceedings under the statute, "the rights and obligations of the parties depend upon it and applicable principles of common law as interpreted and applied in the federal courts." (*Chesapeake & Ohio Ry. Co.* v. *Kuhn,* 284 U.S. 44, 46-47 [52 S.Ct. 45, 76 L.Ed. 157]; *Graham* v. *Atchison, T. & S. F. Ry. Co.,* 176 F.2d 819, 824; *Anderson* v. *Atchison, T. & S. F. Ry. Co.,* 31 Cal.2d 117, 121-122 [187 P.2d 729].) "What constitutes negligence for the statute's purposes is a federal question, . . . Federal decisional law formulating and applying the concept governs." (*Urie* v. *Thompson,* 337 U.S. 163, 174 [69 S.Ct. 1018, 93 L.Ed. 1282]; *Chicago M. & St. P. Ry. Co.* v. *Coogan,* 271 U.S. 472, 474 [46 S.Ct. 564, 70 L.Ed. 1041].)

The act does not make the employer an absolute insurer against personal injuries suffered by its employees, but imposes liability only for negligence. (*Wilkerson* v. *McCarthy,* 336 U.S. 53, 61 [69 S.Ct. 413, 93 L.Ed. 497]; *Wetherbee* v. *Elgin, J. & E. Ry. Co.,* 191 F.2d 302, 306; *Blunk* v. *Atchison, T. & S. F. Ry. Co.,* 97 Cal.App.2d 229, 234 [217 P.2d 494].) "The employer is not held to an absolute responsibility for the reasonably safe condition of the place, tools and appliances, but only to the duty of exercising reasonable care to that end." (*Baltimore & O. S. W. R. Co.* v. *Carroll,* 280 U.S. 491, 496 [50 S.Ct. 182, 74 L.Ed. 566].) Under the act, the duty which rests upon the employer is the common law duty of exercising reasonable care having regard to the circumstances and fault or negligence may not be inferred from the mere fact that the employee was injured. (*Missouri P. R. Co.* v. *Aeby,* 275 U.S. 426, 430 [48 S.Ct. 177, 72 L.Ed. 351]; *Thompson* v. *Atchison, T. & S. F. Ry. Co.,* 96 CalApp.2d 974, 977 [217 P.2d 45].) "The plaintiff cannot recover in the absence of negligence on the part of defendant." (*Toledo, St. L. & W. R. Co.* v. *Allen,* 276 U.S. 165, 168-169 [48 S.Ct. 215, 72 L.Ed. 513].)

As the court said in *McGivern* v. *Northern Pac. Ry. Co.,* 132 F.2d 213, 217, "danger in a particular phase of an employment does not necessarily imply negligence . . . 'no employment is free from danger.' The defect to form the basis for a cause of action must be one which implies negligence on the part of the employer, or those for whose acts he is answerable." The present decision completely disregards these well settled rules of the federal courts.

At common law, "[t]he master's duty as to working conditions does not extend to the condition of premises not in

his control, nor to the conduct of third persons with whom the servants are to be brought into contact during the course of the work, except that he has a duty to disclose dangerous conditions of which he should know." (Rest., Agency, § 504; *Bosarge* v. *Gaines,* 93 F.2d 800, 801; *Roche* v. *Llewellyn Iron Works Co.,* 140 Cal. 563, 569-570 [74 P. 147]; *Lang* v. *Lilley & Thurston Co.,* 20 Cal.App. 223, 230 [128 P. 1028].) The element of control required by the common law for the imposition of liability upon the employer for injuries to an employee occurring upon the premises of a third party has been carried into the act. It provides liability only for negligence of the employer's "officers, agents, or employees" or for defects in "its" property and equipment due to "its" negligence."

The Senate Judiciary Committee report upon the 1939 amendment to the act which abolished the defense of assumption of risk under the statute stated: "In justice, the master ought to be held liable for *injuries attributable to conditions under his control* when they are not such as a reasonable man ought to maintain in the circumstances." (Report of Senate Committee on Judiciary, 76th Cong., 1st Sess., Rept. No. 661, p. 4, emphasis added.) The committee's interpretation of the act has been adopted by the Supreme Court of the United States. (*Tiller* v. *Atlantic Coast Line R. Co.,* 318 U.S. 54, 67 [63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967].) In *Wilkerson* v. *McCarthy, supra,* the court said: "And a jury should hold a master 'liable for injuries attributable to conditions under his control when they are not such as a reasonable man ought to maintain in the circumstances,' . . ." The language of section 54 of the act, there being considered, is identical to that of section 51 in requiring that the negligence be that "of the officers, agents, or employees of such carrier."

Although speaking vaguely of "the authorities which have recognized liability in such cases," the majority of this court have cited no decision applying the act which has abrogated the common law rules of negligence. No such case can be found. For the imposition of liability without fault reliance is placed upon *Terminal R. Assn. of St. Louis* v. *Fitzjohn,* 165 F.2d 473, 476-477, which, upon its facts, is clearly distinguishable from Ericksen's situation. There, the employer had taken over the instrumentalities of a third party to perform the railroad's functions. The control of the ordnance

plant was in the government, but the facilities used in the switching procedure were under the control of the railroad. The injury to the employee occurred because a railroad car, under the control of the employer, was pulled past a place known to it to be dangerous while the employee was in a position where he might be injured. Although the employer did not construct the premises nor control the location of the wall and light standards, it controlled the use of the instrumentality which caused the injury. In the present case, however, the employer had no control over either the premises or the operation of the instrumentality causing the injury.

In the Terminal case the court said that "the fact that the premises where plaintiff was sent to work did not belong to and were not under the control of defendant did not absolve defendant from liability for their unsafe condition." Although this very broad language appears to support the decision in favor of Ericksen, it is directly contrary to the interpretation placed upon the act by the Supreme Court of the United States, whose decisions upon this question are controlling. In addition, the statement was entirely unnecessary to the decision.

It has long been the rule that "where a railroad company permits an obstruction, of which it has actual or constructive knowledge to remain, on, over or near its tracks, and by reason of such obstruction its servant is injured, the company is liable, although the obstruction belongs to it, or is under the control of a third person." (*Sprickerhoff* v. *Baltimore & Ohio R. Co.*, 323 Ill.App. 340, 346 [55 N.E.2d 532]; *Boston & M. R. R.* v. *Brown*, 218 F. 625, 627.) Where obstructions exist on, over or near the tracks, it is the duty of the railroad toward its employees to give sufficient warning by means of telltales or other devices. (See, generally, annotation in 79 A.L.R. 236.) Even though the obstruction is owned and controlled by a third party, "[i]f the passage beneath it was not reasonably safe under all of the circumstances, the railroad might still be negligent in continuing to permit the passage of trains beneath it while in such condition." (*Boston & M. R. R.* v. *Brown, supra*; *Humphfres* v. *Western Pac. Ry. Co.*, 173 Cal. 428, 433 [160 P. 415].) The reason for the rule is obvious. Although the railroad may not control the obstruction, it controls the operation of its trains, which may be diverted to avoid the obstruction. The negligence does not consist of permitting the continuance of the obstruction, but lies in the operation of a train con-

trolled by the railroad past a point which is unsafe because of the obstruction.

The rule is no different where the railroad is operating trains upon the tracks of another. In such case, the track and other instrumentalities which it is using are "its" for the purposes of the act as much as if it were operating the road under lease. (*Campbell* v. *Canadian N. Ry. Co.*, 124 Minn. 245, 250 [144 N.W. 772].) The sources of the employer's title to the instrumentalities in its control and use are of no concern to the employee and, "as between them, they are the tools of the master, and he is liable to the servant for their defects." (*Smith* v. *Memphis & L. R. R. Co.*, 18 F. 304, 310.) Although the defect is not on property owned by the employer, if it is using the property in the conduct of its business and if, by exercising ordinary care, it could have remedied or repaired the condition, or warned the employee thereof, it is liable for failure to do so. (*Brum* v. *Wabash Ry. Co.*, 335 Mo. 876, 882-883 [74 S.W.2d 566].) But in every case where liability has been imposed upon the employer for injury caused to the employee by a defect in the property or instrumentalities of another, the premises or tools have been under the control of the employer and in use by it in the conduct of its business. Such was the situation in the Terminal case. However, here the employer had no control of the premises or instrumentalities, which were used by Cheney Lumber Company exclusively in the conduct of its business.

The Terminal decision relies upon *Albert Miller & Co.* v. *Wilkins*, 209 F. 582 [126 C.C.A. 404]; *American Machinery Co.* v. *Ferry*, 141 Ky. 372 [132 S.W. 546]; and *Grand Trunk R. Co.* v. *Tennant*, 66 F. 922 [14 C.C.A. 190]. In each of them, the defendant employer was in control of the instrumentalities being used in the performance of the work, although the work was being done upon the premises of a third party. In addition, the American Machinery and Grand Trunk cases also concerned the duty of warning the employee of a danger upon the premises of the third party of which he did not know. The latter question is not here·involved. The reliance of the Terminal case upon decisions stating the rule applicable when the employer controls the instrumentality being used, and its conformity with the general rule relating to obstructions near railroad tracks, clearly show that it is not authority in determining the rights of the

parties where the employer has no control of the premises or instrumentalities.

For these reasons I would reverse the judgment and the order denying the motion for judgment notwithstanding the verdict and direct the trial court to enter its order granting said motion.

Schauer, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied August 28, 1952. Edmonds, J., Schauer, J., and Spence, J., were of the opinion that the petition should be granted.