[S. F. No. 19090. In Bank. Apr. 29, 1955.]

CHARLES M. GILEO, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

Arthur B. Dunne and Dunne, Dunne & Phelps for Appellant.

Hildebrand, Bills & McLeod, Sheridan Downey, Jr., D. W. Brobst and Clifton Hildebrand for Respondent.

GIBSON, C. J.—Plaintiff was employed by defendant, a common carrier by railroad, when he was injured while working on the construction of new railroad cars. In this action, which was brought under the Federal Employers' Liability Act, the parties stipulated to the existence of negligence and the amount of plaintiff's damages. The sole question left for determination was whether the act was applicable. The trial court concluded that plaintiff was entitled to the benefits of the act, and defendant has appealed from the ensuing judgment.

In February 1951, after being employed by defendant for ten years to repair railroad cars already in service, plaintiff began working as a carman welder on the construction of new cars. The cars were being built in accordance with a resolution adopted by defendant's board of directors which provided for the acquisition of 5,000 new cars and for their assignment to defendant and a subsidiary, the Texas and New Orleans Railroad Company. Another subsidiary, the Southern Pacific Equipment Company, undertook the construction of 2,000 of the units, including 1,000 gondola cars allotted to the Texas Company. Defendant supplied the labor and shop facilities, paid the workmen and billed the equipment company for labor and certain other maintenance costs. The gondola cars, when completed, were to be shipped out of state and leased to defendant, which, in turn, was to sublease them to the Texas Company. Plaintiff was injured in July of 1951 while "welding corners" on one of the gondola cars.

In the shop where plaintiff worked there was a department for repairs and another for new construction, and positions in both departments were filled from the same seniority list. Every day some of the employees ordinarily engaged in making repairs were placed on new construction in order to offset vacancies created by absenteeism. Men on new construction could be transferred to repair work, and this was done on a few occasions, but plaintiff worked exclusively on new construction after being assigned to it.

The Federal Employers' Liability Act provides in part:
"Every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

"Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter." (53 Stats. 1404; 45 U.S.C.A. § 51.)

It is the position of defendant that it is not liable under the act unless it can be said that in manufacturing railroad cars it was engaging in interstate commerce. This argument overlooks the effect of the second paragraph of the section quoted above, which was added by amendment in 1939. Under that paragraph, plaintiff is considered to have been employed by defendant in interstate commerce and is entitled to the benefits of the act if his duties were in the furtherance of such commerce or affected it in any way "directly or closely and substantially." (*Ericksen* v. *Southern Pac. Co.*, 39 Cal.2d 374, 378 [246 P.2d 642].)

The 1939 amendment was enacted to include injured employees previously excluded and to eliminate confusion and hardship to which they were subjected in choosing whether to bring suit under state or federal law. (See *Shelton* v. *Thomson*, 148 F.2d 1; *Wright* v. *New York Cent. R. Co.*, 263 App.Div. 461 [33 N.Y.S.2d 531]; *Ermin* v. *Pennsylvania R. Co.*, 36 F.Supp. 936, 940; Sen.Rep. No. 661, 76th Cong., 1st Sess. (1939).) In order to effectuate the purposes of the amended act, all doubt should be resolved in favor of its applicability. (See *Lewis* v. *Industrial Acc. Com.*, 19 Cal.2d 284, 286 [120 P.2d 886].)

The duties of plaintiff were at least as intimately connected with interstate commerce as those involved in a number of cases where the act, as it now reads, has been applied. (*Shelton* v. *Thomson*, 148 F.2d 1 [operating a crane, located in a store-

house, to lift freight car wheels used to repair cars, including some which moved in interstate commerce]; *Brainard* v. *Atchison, T. & S. F. Ry. Co.*, 87 F.Supp. 921 [assembling railroad switches and "frogs" later to be installed on lines of track, including the main line carrying interstate commerce]; *Agostino* v. *Pennsylvania R. Co.*, 50 F.Supp. 726 [constructing new tracks to replace existing tracks used in interstate commerce]; *Ericksen* v. *Southern Pac. Co.*, 39 Cal.2d 374 [246 P.2d 642] [inspecting lumber for fitness as railroad ties, some of which would cross state lines and would be used in repairing tracks carrying interstate traffic]; *Southern Pac. Co.* v. *Industrial Acc. Com.*, 19 Cal.2d 283 [120 P.2d 888] [repairing a freight car used in interstate and intrastate commerce]; *Wills* v. *Terminal R. Assn. of St. Louis*, 239 Mo.App. 1144 [205 S.W.2d 942] [installing a ventilating pipe in the roof of a building in which iron parts were forged for use in repairing equipment, including some used in interstate commerce]; *Trucco* v. *Erie R. Co.*, 353 Pa. 320 [45 A.2d 20] [constructing "strap hangers" used to replace parts in engines, some of which were devoted to interstate commerce]; *Jordan* v. *Baltimore & Ohio R. Co.*, 135 W.Va. 183 [62 S.E. 2d 806] [laying tile in a sewer which, when finished, was to be connected to a "roundhouse" where engines moving in interstate commerce were serviced].)

Before the broad language now appearing in the act was added by the amendment in 1939, some decisions indicated that there was a distinction between an employee repairing equipment already operating in interstate commerce and one constructing equipment later to be used in that commerce, and it was held that the latter did not have federal coverage. (*New York Central R. R. Co.* v. *White*, 243 U.S. 188, 192 [37 S.Ct. 247, 61 L.Ed. 667]; *Raymond* v. *Chicago, M. & St. P. R. Co.*, 243 U.S. 43, 45 [37 S.Ct. 268, 61 L.Ed. 583]; see *Pedersen* v. *Delaware, L. & W. R. Co.*, 229 U.S. 146, 152 [33 S.Ct. 648, 57 L.Ed. 1125].) The only case decided after 1939, however, in which such a distinction was applied is *Moser* v. *Union Pac. R. Co.* (1944), 65 Idaho 479 [147 P.2d 336, 153 A.L.R. 341], where a divided court held that an employee working on the construction of four miles of new track was not covered by the act. We cannot agree with the reasoning of the majority opinion in the Moser case. ▮ Under the language added by the amendment, an employee of a common carrier by railroad is entitled to the benefits of the act if his duties further interstate commerce or affect it in

any way "directly or closely and substantially," regardless of whether the work which he is doing may be classified as new construction or repairs. The cars on which plaintiff was working were intended to be used in interstate commerce, and it is clear that the construction of the cars furthered such commerce.

The judgment is affirmed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.