[Civ. No. 22046.   First Dist., Div. Three.   Apr. 13, 1966.]

JOHN E. FARNSWORTH, Plaintiff and Respondent, v. WESTERN PACIFIC RAILROAD COMPANY, Defendant and Appellant.

478

Cottrell, Hofvendahl & Roessler and F. H. Pearson, Jr., for Defendant and Appellant.

Boccardo, Blum, Lull, Niland, Teerlink & Bell and Edward J. Niland for Plaintiff and Respondent.

SALSMAN, J.—This is an appeal from a judgment awarding respondent $64,000 damages for personal injuries arising out of an accident that occurred on April 11, 1960. The basis for the liability imposed is the Federal Employers' Liability Act. (45 U.S.C.A. § 51 et seq.) Appellant contends (1) there is no evidence of its negligence; (2) the respondent was contributorily negligent; (3) the negligence of a third party

contributed to the happening of the accident, and finally (4) that the damages awarded are excessive.

Appellant's first contention is not supported by the record. There is some basis for appellant's remaining contentions concerning the negligence of respondent and a third party, but this does not compel reversal of the judgment. The damages awarded, although liberal, are not so great that under established rules the award must be set aside. We therefore affirm the judgment.

On April 11, 1960, respondent was employed as a fireman on an engine owned and operated by appellant. The engine, pulling a boxcar, approached a crossing at Calaveras Road in Milpitas. Respondent, from his position in the engine, saw a gravel truck also approaching the crossing. Although respondent could see the truck, the engineer, who was in immediate control of the engine, could not. The speed of the engine and boxcar was only about 7 miles per hour. About 200 feet from the crossing the engineer blew the whistle and respondent turned on the warning bell, but the truck continued on towards the crossing. When the engine was 50 to 75 feet from the crossing respondent told the engineer that a truck was approaching at high speed and suggested that the engineer again blow the whistle. A few feet from the crossing, respondent, fearing a collision, yelled to the engineer "plug it,"[1] and at the same time reached for the whistle cord, partly for the purpose of sounding the whistle, but also to assist him in a quick exit from the fireman's seat, because the imminent impact would be on his side of the engine. The wooden handle on the whistle cord came loose and respondent fell forward. The engineer attempted to stop the engine, but could not do so. Respondent felt the wheels of the engine skid along the tracks. His knee got caught under a brake valve, and he was flipped back into his seat. There was an impact between engine and truck, and the engine tipped slightly, but the collision was not a severe one. After the collision the engineer stated that ". . . he guessed he got excited and reversed it." There was evidence that this action would cause the wheels to skid and diminish the braking effect. After the collision the reverse lever of the engine was in reverse position.

Respondent sustained injury in the accident. There was evidence that he suffered a whiplash injury to his cervical spine; there was some injury to his shoulder and right knee.

---

[1]The expression "plug it" means that the engineer is to take emergency steps to bring the locomotive to a stop.

He visited his doctor a total of 40 times from April 11th to October 7th, took medicine, diathermy treatments, and wore a Thomas collar. However, he returned to his work on May 2d and continued to work part time until December 12, 1960.

On December 12, 1960, respondent was involved in a second railroad accident and sustained injury to his head and neck. After the second accident he was unable to return to work. About a year after his second accident he entered a hospital where surgery to his cervical spine was performed. At the time of trial he still suffered pain in his neck, back and left arm.

Respondent filed two actions against appellant, one based on the accident of April 11th and the second based on the accident of December 12th. The actions were consolidated for trial. The jury found in favor of respondent as to the first accident, but against him and in favor of appellant as to the second accident.

Appellant's first contention is that there is no evidence of any negligence on its part in the accident of April 11th. Appellant's burden here is a heavy one, and well known. (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183].) ▪ If there is any substantial evidence of appellant's negligence, we must affirm the judgment. ▪ Moreover, this is an action under the Federal Employers' Liability Act, and the courts have made it plain that federal law controls. (*Brady* v. *Southern Ry. Co.*, 320 U.S. 476 [64 S.Ct. 232, 88 L.Ed. 239]; see also *Showalter* v. *Western Pac. R.R. Co.*, 16 Cal.2d 460, 471 [106 P.2d 895].) The case of *Rogers* v. *Missouri Pac. R. Co.*, 352 U.S. 500, 506-507 [77 S.Ct. 443, 1 L.Ed.2d 493], illustrates the federal attitude towards questions concerning the sufficiency of the evidence in cases arising under the act: "Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death." ▪ Here, then, our task is merely to examine the record to see if there are any facts present from which the

jurors, as fair minded men and women, could reasonably infer negligence on the part of appellant. Of course such facts are present. For example, there is some evidence that when respondent shouted ''plug it'' to the engineer, the engine could have been stopped before it reached the crossing, but that the engineer threw the driving mechanism into reverse, thus reducing braking power and causing the engine to slide forward rather than stop. There is also some evidence that the engineer did not use the engine's sanders (a device for pouring sand on the rails to aid traction and thus prevent skidding of the engine's wheels). There was also evidence that no flagman was used or was intended to be used in the first crossing of Calaveras Road, although a brakeman was aboard and it was intended to use him as a flagman when the engine was to back across the road. This is evidence from which the jury could reasonably conclude that appellant, through its employees, especially the engineer, was negligent.

Appellant next argues that respondent was contributorily negligent and that the jury did not follow the court's instruction to diminish the amount of any award in proportion to the amount of respondent's negligence. ■ There was indeed some evidence that respondent was negligent. But there was also some evidence from which the jury could reasonably conclude that his negligence did not contribute to the happening of the accident.[2] It is perfectly clear, however, that respondent was not guilty of negligence as a matter of law, and that his negligence was not the sole cause of the accident in which he sustained his injuries. All that may fairly be said on our record is that there was evidence before the jury from which conflicting inferences concerning respondent's negligence might be drawn. ■ The jury returned a verdict in respondent's favor, but from the form of the verdict we cannot tell whether or not the jury found respondent guilty of negligence. They were told to diminish his verdict in proportion to his negligence, and we must presume that, if they found him negligent, they obeyed the court's instruction. ■ The issue of respondent's claimed negligence could readily have been determined by interrogatories submitted to the jury.

---

[2]There was evidence that when respondent first observed the truck, and for a short time thereafter, he did not warn the engineer. But there is also evidence that if the engineer had acting promptly and correctly after respondent's shout to ''plug it,'' the engine could have been stopped before the collision.

(Code Civ. Proc., § 625.) Thus the jury could have been asked directly if they found contributory negligence on the part of respondent, and if their verdict was in respondent's favor, its total amount, and the amount by which they diminished the award because of respondent's contributory negligence, if such negligence was found. Of course we understand a plaintiff's natural reluctance to suggest that a verdict in his behalf be reduced by any amount, and we also appreciate a defendant's diffidence in asking a question that implies any verdict at all against him. ■ But where, as here, the contention is made that a plaintiff in a Federal Employers' Liability Act case has been negligent and the jury has not diminished his damages in accordance with the statute and the court's instructions, an appellate court can grant no relief unless there is an affirmative showing that the jury in fact found the plaintiff contributorily negligent. However, in cases where the amount of the award is so gross as to shock the conscience and clearly show it to be a product of the jury's passion and prejudice, the court may grant relief.

■ We reject appellant's contention that the truck driver was negligent and that his negligence was a further contributing cause of the accident. If established, this fact would be immaterial if negligent conduct on the part of appellant was also present. (45 U.S.C.A. § 51; *Grand Trunk Western Ry. Co.* v. *Lindsay*, 233 U.S. 42 [34 S.Ct. 581, 58 L.Ed. 838]; *Lewis* v. *Union Pac. R.R. Co.*, 127 Cal.App.2d 280, 284 [273 P.2d 706].)

Appellant also argues that the jury assessed damages for injuries to respondent that were occasioned by the December 12th accident and that this is improper. Appellant states its point thus: "It should be strongly emphasized that since the jury found the defendant not responsible for the second accident, they were precluded from awarding damages for any injuries resulting from the second accident, and appellant reemphasizes that they were then limited to only those injuries and damages proximately caused by the accident of April 11, 1960. This was for a period of time beginning on April 11, 1960, and concluding at a period of time just prior to the December 12, 1960 accident."

It is true that damages sustained by respondent in the December 12th accident may not be charged to appellant. But this does not mean that the December 12th accident operated to terminate all of respondent's claims for injuries in the April 11th accident. If his disabilities arising out of the first

accident continued beyond the date of his second accident he could recover for them, if appellant is otherwise liable.

The real question is whether respondent's medical problems arising after December 12th were attributable to his first accident rather than the second one. Again, there is evidence in the record to support the jury's implied finding that such was the case.

At the time of the second accident respondent's physical condition had improved, but his neck and shoulder condition still bothered him, and he continued to wear his Thomas collar. Respondent's surgery to his spine took place about a year after his second accident. His doctor testified that both accidents had ". . . a distinct bearing upon [the operation] . . . due to the factors that, of course, elicited the pain and discomfort. . . ." Asked about the part played by the April 11th accident in respondent's subsequent surgery, the doctor stated: "It was the primary factor involved in that this was the time, to the best of my knowledge, the initiation of all symptoms and findings referable to the head, neck, shoulder area." Appellant's medical witnesses also acknowledged that respondent's symptoms dated back to the April 11th accident and were probably aggravated by the accident of December 12th. Thus there is evidence to support the jury's conclusion that the April 11th accident was a cause of damage arising after the December 12th accident, and particularly the surgery to which respondent thereafter submitted. Moreover, the jury was instructed that respondent had filed a separate action for each accident, and that it should make a separate determination of the amount of damages, if any, to which the plaintiff might be entitled as a result of each accident. We must presume that the jury followed the court's instructions and treated the two accidents separately, assessing damages against appellant only for the accident of April 11th, since they returned a verdict in appellant's favor with respect to the accident of December 12th.

Finally appellant vigorously urges that the verdict is excessive. Although substantial damages were awarded, the verdict is supported by the evidence. It must be remembered that the issue of damages is primarily factual and subject to jury determination rather than meticulous scrutiny and comparison by appellate judges. (See *Seffert* v. *Los Angeles Transit Lines*, 56 Cal.2d 498 [15 Cal.Rptr. 161, 364 P.2d 337].) Here there was evidence of extended disability, loss of wages and a permanent inability to resume

former employment. At time of trial respondent was 54 years of age. His life expectancy was 19.8 years. At that time he was still suffering pain in his arm, neck and back. His neck disability was described as permanent, and he was said to be unfit for further railroad employment which had been his occupation for some 20 years.

We note also that appellant moved for a new trial on the ground of excessive damages. The trial judge, who heard all of the testimony and observed the parties and witnesses, rejected this contention and approved the verdict rendered by the jury. ▇▇ Where, as here, the claim is made that damages are excessive, the amount awarded by the jury and approved by the trial judge may not be set aside on appeal unless the evidence shows the award to be the result of passion, prejudice or corruption on the part of the triers of fact. (*Ericksen* v. *Southern Pac. Co.*, 39 Cal.2d 374, 382 [246 P.2d 642] ; *Drotleff* v. *Renshaw*, 34 Cal.2d 176, 180 [208 P.2d 969].) There is, of course, no such showing here.

Judgment affirmed.

Draper, P. J., and Devine, J., concurred.