246 S.W.2d 535 (1952)
BOWERS et al.
v.
WABASH R. CO.
No. 28315.
St. Louis Court of Appeals, Missouri.
February 19, 1952.
Motion for Rehearing or to Transfer to Denied March 17, 1952.
*536 Paul H. Koenig, Thomas L. Sullivan, St. Louis, for appellants.
Albert E. Schoenbeck, St. Louis, for respondent.
Motion for Rehearing or to Transfer to Supreme Court Denied March 17, 1952.
ANDERSON, Judge.
This is an appeal from a judgment of the Circuit Court of the City of St. Louis affirming a final award of the Industrial Commission of Missouri which denied a claim for death benefits under the Missouri Workmen's Compensation Act. The claim was filed by Edward F. Bowers and Frieda Bowers, his wife, as natural guardians of Vernon Bowers, Norman Bowers, Erwin Bowers, Sandra Bowers, and Joyce Bowers, brothers and sisters and alleged dependents of the deceased employee, Edward C. Bowers, Jr. The Wabash Railroad Company, respondent herein, was the employer against whom said action was brought.
The deceased employee, Edward C. Bowers, Jr., was hired as a messenger by the respondent, Wabash Railroad Company, on December 3, 1945. He continued in the employ of respondent as a messenger until his death on July 31, 1946. The deceased, on July 31, 1946, reported for work at the freight station of the employer at 927 Collins Street in the City of St. Louis, Missouri, where he secured railroad mail for the East St. Louis, Illinois, freight station. He then left the Collins Street station to deliver the mail to the East St. Louis freight station and, while enroute over Collins Street, was caught between a parked trailer belonging to the Columbia Terminals Company and a passing Columbia Terminals Company tractor and trailer, and was severely injured, from which injuries he died a few hours later. It was admitted that the accident arose out of and in the course of the deceased's employment.
From the date of his employment, until about one month before his accident and death, deceased worked out of the St. Louis office as a regular messenger. His duties consisted of securing railroad mail from the mail room at the Union Station in St. Louis, or from passenger trains at said station, and delivering it to the respondent's freight station at 927 Collins Street, where it would be sorted. This mail consisted of packages of waybills covering merchandise enroute to East St. Louis on freight trains from Chicago and Detroit, and general railroad mail.
About one month before Bowers met his death he was assigned to the respondent's East St. Louis freight office as an extra messenger, and worked in that capacity until the date of his death. His duties as extra messenger required him to report to the respondent's freight station at 927 Collins Street at 8:30 o'clock each morning where he would secure the railroad mail for the East St. Louis freight office. He would then deliver this mail to said East St. Louis freight office. During the remainder of the day he would make trips from the East St. Louis freight station to the Merchants' Exchange in St. Louis, Missouri, to pick up grain orders which he would return to the East St. Louis freight station. At the end of the day he would bring the mail from the East St. Louis freight station to the St. Louis freight station. Such mail consisted of waybills for outbound cars. The grain orders which he delivered were orders to re-consign cars of grain enroute to East St. Louis which, during the transportation thereof, were re-sold in transactions at the Merchants' Exchange at St. Louis, Missouri.
On the morning he was fatally injured, Bowers was enroute from the office of the Wabash freight agent at St. Louis, Missouri, to the office of the agent at East St. Louis, Illinois. At the time he was injured he was carrying general mail which he *537 had picked up at the freight office on Collins Street, and waybills from Wabash passenger trains No. 3 and No. 17. Wabash passenger train No. 3 operates between Detroit, Michigan, and St. Louis, Missouri; and Wabash passenger train No. 17 operates between Chicago, Illinois, and St. Louis, Missouri. The waybills which Bowers was carrying from Wabash train No. 3 covered freight then enroute from Detroit, Michigan, to East St. Louis, Illinois. The purpose of Bowers' carrying the waybills, received from Wabash train No. 3 at St. Louis, Missouri, to East St. Louis, Illinois, was to have such bills available at East St. Louis, either for surrender of the freight to the proper consignee, or for further shipment to points beyond East St. Louis. A number of the shipments were destined to points in Missouri, Arkansas, and Oklahoma, and were delivered to the Columbia Terminals in East St. Louis. The waybills which Bowers was carrying at the time he was fatally injured concerned freight which was actually in movement. Such freight was shipped from Detroit, Michigan, on July 30, 1946, and was expected to reach the Wabash freight house at East St. Louis on either the night of July 31st or the morning of August 1, 1946. If the waybills which Bowers was carrying at the time he was injured were not in the hands of the Wabash agent at East St. Louis at the time of the arrival of the shipments therein represented, deliveries in the regular manner could not be made of the freight, with the result that delivery, or further transportation to points beyond East St. Louis, would be delayed.
The claim was filed with the Division of Workmen's Compensation of the Industrial Commission on February 15, 1949. There was evidence adduced that claimants herein, Edward F. Bowers and Frieda Bowers, father and mother of deceased, and their minor children, were, for at least two months prior to the death of Edward C. Bowers, totally dependent upon the latter for support.
The referee's finding was as follows:
"I find from the evidence that the Division of Workmen's Compensation is without jurisdiction in this case by reason of the fact that on July 31, 1946, date of employee's accidental death, said employee was in the employ of the Wabash Railroad Company and was engaged in duties in the furtherance of interstate commerce within the meaning of the Federal Employer's Liability Act, as amended.
"Compensation, therefore, must be and is hereby denied."
The foregoing decision was affirmed by the full Commission. The circuit court also affirmed.
The question presented by this appeal is whether appellants' rights are to be determined under the Missouri Workmen's Compensation Law, RSMo 1949, Chapter 287, V.A.M.S., or under the Federal Employers' Liability Act, 35 Stat. at L. 65, Chapter 149, 53 Stat. at L. 1404, Chapter 685, 45 U.S.C.A. § 51 et seq.
Prior to 1939, the Federal Act, U.S.Code, Title 45, sec. 51, 45 U.S.C.A. § 51, defined its coverage as follows: "Every common carrier by railroad while engaging in commerce between any of the several States * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier".
In construing this act to determine its coverage, the test applied by the courts was, whether the employee at the time of his injury or death was engaged in interstate transportation, or in work so closely related thereto as to be practically a part of it. Shanks v. Delaware, Lackawanna & Western R. R. Co., 239 U.S. 556, 36 S.Ct. 188, 60 L.Ed. 436. And, whether his service was so closely related to interstate transportation as to be within the intendment of the Act, was a question of remoteness and degree to be determined from the facts in each case. A finding that it was an intimate and integral part of interstate transportation was essential to recovery. Kinzell v. Chicago, Milwaukee & St. Paul R. R. Co., 250 U.S. 130, 39 S.Ct. 412, 63 L.Ed. 893; *538 Chicago & E. I. R. R. Co. v. Industrial Commission, 284 U.S. 296, 52 S.Ct. 151, 76 L.Ed. 304.
In 1939 Congress amended the law by incorporating into Section 1 of the Act the following definitive provision, 45 U.S.C.A. § 51: "Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter." (Italics ours.)
For cases within the scope of the Federal Act there is no remedy for the employee or liability on the part of the employer except under said Act. Mondou v. New York, New Haven & Hartford R. R. Co., 223 U.S. 1, 32 S.Ct. 169, 56 L.Ed. 327; Delaware, L. & W. R. Co. v. Yurkonis, 238 U.S. 439, 35 S.Ct. 902, 59 L.Ed. 1397; New York Central R. Co. v. Porter, 249 U.S. 168, 39 S.Ct. 188, 63 L.Ed. 536; New York Central R. Co. v. Winfield, 244 U.S. 147, 37 S.Ct. 546, 61 L.Ed. 1045. And, since Congress has legislated on the subject, no room exists for state regulation, even in respect to injuries occurring without fault, as to which the Federal Act provides no remedy. New York Central R. Co. v. Winfield, 244 U.S. 147, 37 S.Ct. 546, 61 L.Ed. 1045.
The amendment of 1939 broadened the whole concept of interstate commerce within the meaning of the Act, so as to include within its coverage not only those employees directly engaged in transportation, or in work so closely related thereto as to be practically a part thereof, but also to those whose duties are in furtherance of interstate commerce, or whose duties in any way directly or closely and substantially affect such commerce. Thus a railroad employee who solicits interstate freight and passenger business has been held to be covered by the Act. Kettner v. Industrial Commission, 258 Wis. 615, 46 N.W.2d 833. In Albright v. Pennsylvania R. Co., 183 Md. 421, 37 A.2d 870, a railroad policeman, employed to guard cars at defendant's terminal and prevent theft of goods therefrom, was fatally injured. The court held that said employee was covered by the Act.
This court, in Wills v. Terminal R. Association, 239 Mo.App. 1144, 205 S.W.2d 942, held that the Act covered an employee who at the time of his injury was engaged in the work of installing a ventilator in the roof of a forge building in which workmen were regularly engaged in forging iron parts used in repairing box cars employed in interstate commerce. In that case are cited many cases from other jurisdictions which give a liberal construction to the 1939 amendment. See also the note in 10 A.L.R.2d 1279-1300, where there is collated and discussed the many cases on the subject. After careful study of the amendment, and the cases construing same, we must reject appellants' contention that the Act is limited in its application to employees whose duties relate to the actual movement of the instrumentalities of commerce or the servicing, repairing and upkeep of same.
In the case at bar, Bowers was engaged in transporting to East St. Louis, Illinois, waybills for interstate shipments. It also appears from the record that unless these waybills were in the hands of the freight agent at the time of the arrival of the freight for which they were issued, there would be delay in the delivery of said shipments to the consignees, and delay in the further transportation of the freight consigned to points in other states. It would seem, therefore, that the use of the waybills in question were necessary instruments for the efficient handling of the shipments in question, and that Bowers was, at the time he was killed, engaged in duties in furtherance of interstate commerce within the meaning of the Federal Employers' Liability Act.
In our opinion, the judgment appealed from should be affirmed. It is so ordered.
BENNICK, P. J., and RUDDY, J., concur.