Martha C. REED

v.

## PENNSYLVANIA RAILROAD COMPANY.

### No. 11600.

United States Court of Appeals
Third Circuit.

Argued Oct. 7, 1955.

Decided Nov. 17, 1955.

Joseph S. Lord, 3d, Philadelphia, Pa. (Barbara Ann Duffy, Richter, Lord & Farage, Philadelphia, Pa., on the brief), for appellant.

Theodore Voorhees, Philadelphia, Pa. (Gordon W. Gerber, Barnes, Dechert, Price, Myers & Rhoads, Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and MARIS and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

This case involves the application of the Federal Employers' Liability Act [1] and its 1939 amendment.[2]

The plaintiff was injured when a window in the Thirty-Second Street office building of the Pennsylvania Railroad blew in upon her during a storm. She was at the time engaged in her work for the Pennsylvania. Her job was to serve as custodian of the files of master sheets from which blueprints were made. The subject matter of the blueprints was any part of locomotives, freight cars or other things used in the business of railroading. When an order came from some point on the railroad's system asking for a blueprint of one of the tracings in the file, it was plaintiff's task to find the tracing there and take it to the blueprint maker, returning the tracing to the files when the blueprint maker was through with it. There is no substantial dispute on the facts. The sole question involved in the case is whether this plaintiff, when injured during the performance of her duties for the railroad, is within the scope of the Federal Employers' Liability Act and its amendment.[3]

The language which must be looked at is that of the 1939 amendment to the statute. The history of the original

1. 35 Stat. 65 (1908), as amended, 45 U.S. C.A. §§ 51-60.

2. 53 Stat. 1404 (1939), 45 U.S.C.A. §§ 51, 54, 56, 60.

3. Answering this question in the negative, the court below granted defendant's motion to dismiss. Reed v. Pennsylvania R. R. Co., Civil No. 15591, E.D.Pa., March 17, 1955.

statute of 1906 and its 1908 successor does not need to be discussed at length here. The 1906 act was considered by the Supreme Court to have gone too far and was declared unconstitutional.[4] The 1908 statute was designed to meet the constitutional difficulties which the Court had considered in the 1906 act.[5] Many cases were decided under the 1908 act. They can be summarized sufficiently accurately for the discussion here by saying that what was required was "on the spot" participation in transportation.[6]

The 1939 amendment was designed to enlarge the coverage of the act.[7] How much did it enlarge it? Mr. T. J. McGrath, General Counsel for the Brotherhood of Railroad Trainmen, said in advocating its adoption:

"Now if this amendment that we propose is put into the act it will, to a very large extent, wipe out the obscurity and the difficulty that now exists in attempting to determine when a man is or is not engaged in interstate commerce. *Its application will be confined, of course, to the character of employees now covered by the present act * * *.*" (Italics ours.)[8]

The pertinent language of the amendment, 53 Stat. 1404 (1939), 45 U.S.C.A. § 51, says:

"Any employee of a carrier, *any part of whose duties* as such employee *shall be the furtherance of interstate or foreign commerce;* or shall, *in any way directly or closely and substantially, affect such commerce* as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter." (Italics ours.)

It is to be noted that the two clauses are in the disjunctive. Each contains language from which one can get out as much as he cares to put in it. Take the word "furtherance," for instance, in the first clause. If one looks up furtherance in the dictionary he finds it is defined as "the act of helping forward," "promotion," "advancement," "progress."[9] It is quite clear, is it not, that a literal dictionary application of the word will sweep all employees of interstate railroads into the group covered by the statute. Take the copy writer who is penning an advertisement of the beauties of travel on the Broadway Limited on its trip from New York to Chicago and who suffers injuries when his desk chair collapses. Certainly the very object of his word painting is the promotion of more passenger business for the Pennsylvania on its crack interstate train. The same thing is true, is it not, of the printer who sets up the type or tends the press on the timetables for the Pennsylvania's interstate trains. His product is to help business by telling passengers when to get on trains and when to get off. Yet all this is a far cry from transportation itself;[10] as much so as the typ-

---

4. The Employers' Liability Cases, Howard v. Illinois C. R. Co., 1908, 207 U.S. 463, 28 S.Ct. 141, 52 L.Ed. 297.

5. Second Employers' Liability Cases, Mondou v. New York, N. H. & H. R. Co., 1912, 223 U.S. 1, 51, 32 S.Ct. 169, 56 L. Ed. 327.

6. See, e. g., Shanks v. Delaware, Lack. & West. R. Co., 1916, 239 U.S. 556, 558, 36 S.Ct. 188, 189, 60 L.Ed. 436, where the test was held to be whether "the employee, at the time of the injury, [was] engaged in interstate transportation, or in work so closely related to it as to be practically a part of it * * *."

7. Robinson v. Pennsylvania R. Co., 3 Cir., 1954, 214 F.2d 798, 799.

8. Hearings Before a Subcommittee of the Senate Committee on the Judiciary, 76th Cong., 1st Sess., on S. 1708, at 8 (1939).

9. Webster, New International Dictionary (2d ed. unabr. 1941).

10. Relying on McFadden v. Pennsylvania R. Co., 1943, 130 N.J.L. 601, 34 A.2d 221, appellant argues that under the amendment the employee's relationship to interstate commerce, rather than interstate transportation, is controlling. Yet she fails to point to any effect which her duties might have had on an aspect of interstate commerce other than inter-

ist in the president's office who writes a letter on a railroad matter, or the clerk who makes out the checks for the treasurer to sign.

If "furtherance" means in this statute everything that its dictionary listings include, the second clause of the section is meaningless repetition. The whole field has been covered already. In view of the constitutional difficulties which the legislators found in the "affect" phrase, and the limitations they placed upon it, to be discussed in a moment, it is incredible to conclude that they were intending a scope for the first clause which is as broad as all out of doors. It is much more likely that the second clause is the broader and that "furtherance" was meant to cover those in the actual business of transportation

itself [11] and the second clause was to cover the fringes.

We come then to the second clause in the amendment which brings in an employee whose duties either "directly" or "closely and substantially" affect interstate commerce.

This language had a very interesting legislative history. The first proposal made in the Senate bill was to have the coverage of every employee whose work "in any way affected" interstate commerce. This was later modified to meet what was at the time thought to be a constitutional difficulty and the "directly" or "closely and substantially" modification appeared in the final bill.[12] That a broader reading of the then recently decided Labor Relations Act case would have indicated to the draftsmen that a constitutional difficulty did not exist,[13]

state transportation. Indeed the interstate commerce involved in railroading is transportation. The Senate committee report indicates that the attention of the legislators was on transportation and transportation employees.

"This amendment is intended to broaden the scope of the Employers' Liability Act so as to include within its provisions employees of common carriers who, while ordinarily engaged in the transportation of interstate commerce, may be, at the time of injury, temporarily divorced therefrom and engaged in intrastate operations.

\* \* \* \* \*

"The preponderance of service performed by railroad transportation employees is in interstate commerce. As to those who are constantly shifting from one class of service to another, the adoption of the amendment will provide uniform treatment in the event of injury or death while so employed." S.Rep.No. 661, 76th Cong., 1st Sess. 2, 3(1939).

11. It would appear that the "furtherance" clause was included to codify certain holdings under the 1908 statute. See, e. g., Hines v. Wicks, Tex.Civ.App.1920, 220 S.W. 581, where it was held that an employee hauling out of state baggage from a train to a baggage room was furthering interstate transportation and within the limited coverage of the 1908 act. See also, Antonio v. Pennsylvania R. Co., 1944, 155 Pa.Super. 277, 38 A.2d 705.

12. During the hearings, Senator Austin

said, in support of his motion to make the substitution:

["Directly" or "closely and substantially"] "occur and recur in many cases of recent date as defining what kind of effect on interstate is comprehended by the commerce clause of the Constitution \* \* \*.

\* \* \* \* \*

"[They embody] the law as it is interpreted by the Supreme Court of the United States in National Labor Relations Board v. Jones & Laughlin Steel Corporation, 1937, 301 U.S. 1, 37 [57 S.Ct. 615, 81 L.Ed. 893]; in the Bituminous Coal Conservation Act of 1935, 49 Stat. 991, in connection with N.R.A. Codes, and in Carter v. Carter Coal Co., 1936, 298 U.S. 238 [56 S.Ct. 855, 80 L.Ed. 1160], and others \* \* \*." Hearings, supra note 8, at 58, 64.

Another noteworthy change in the original bill occurred during the Senate hearings. The first proposal would have included within the coverage of the statute "Any employee \* \* \* whose duties \* \* \* shall be in any degree incidental [to interstate commerce] \* \*." Hearings, supra note 8, at 2. This clause, which might well have extended the applicability of the statute beyond the "directly or closely and substantially affect" phrase, was eliminated from the final bill, apparently because of the constitutional difficulties thought to be involved. See Hearings, supra note 8, at 64.

13. In National Labor Relations Board v. Jones & Laughlin Steel Corp., 1937, 301

is immaterial. They did not so interpret it.[14] Instead they left to courts the problem of what is "directly" or "closely and substantially".

We need not worry much about the "directly" part of the clause. What is direct is not entirely sun-clear but is much easier to categorize than the second phrase, "closely and substantially".

In trying to decide what these words mean one is immediately reminded of the trackless maze of "proximate" cause questions in the law of Torts. The words are not capable of precise definition and it is likely they were not meant to be. Here was left an area for courts to deal with sets of facts as they arose and to give an interpretation which would not push the act so far as to encounter constitutional difficulties.

The plaintiff urges that an employee's occupation closely and substantially affects interstate commerce if that employee's activities are such that without it interstate commerce would stop or be interrupted. From that it is argued that if Miss Reed failed to bring an ordered tracing from the file to the blueprint maker, the print for the locomotive wheel would not get to the machine shop; if it did not get to the machine shop, the repairs would not be made; if the repairs were not made, the locomotive or car could not run. If the locomotive or car could not run, interstate commerce would be, to that extent, interrupted. And if enough such omissions occurred, transportation on the great Pennsylvania system would grind to a dismal halt. Now of course that is true. But it is equally true that if the messenger boy who was supposed to pick up the letters containing the blueprints, addressed to the various shops throughout the railroad system, failed to pick them up and mail them, the same thing would happen. One is reminded of the old rhyme "for want of a nail the shoe was lost" and its dire chain of catastrophe.

We think it just as well if we do not try to lay down a litmus test which will give a red or blue reaction to all possible sets of fact. We think here that we are being asked to apply the act in a situation which would take us further than any case we have seen. We said in Straub v. Reading Co., 3 Cir., 1955, 220 F.2d 177, 183, that we had a "borderline" case in a matter which involved an assistant chief timekeeper whose responsibility was to see that employees were properly paid and were not allowed to work more than sixteen consecutive hours. That is closer and more substantial than the plaintiff's connection here.[15]

As we remarked in Shaw v. Monessen Southwestern Ry. Co., 3 Cir., 1953, 200 F.2d 841, 844, we should be careful not to extend this statute too far. If a plaintiff can prove negligence he may be better off than he would be under workmen's compensation law. But if he cannot, he gets nothing. Cf. Pa.Stat.Ann. tit. 77, §§ 431, 461. The hardship of denying recovery to one who was injured but who cannot show the required lack of care on the part of the employer is readily apparent.

We think both from the legislative history and the course of decision that we should not extend the application of the statute to cover this case.[16]

U.S. 1 [57 S.Ct. 615, 81 L.Ed. 893], the Court held constitutional a statute which on its face covers activities merely "affecting" interstate commerce.

14. See note 12 supra.

15. Cf. Holl v. Southern Pac. Co., D.C. N.D.Cal.1947, 71 F.Supp. 21, where it was held that the act did not cover a clerk filling out forms in a freight claims department.

16. We do not see that the citation of cases on the application of the Fair Labor Standards Act, 52 Stat. 1060 (1938), as amended, 29 U.S.C.A. §§ 201–219, is helpful. The test there is whether an employee is engaged in commerce or in the production of goods for commerce. Cases cited by appellant, e. g., Martino v. Michigan Window Cleaning Co., 1946, 327 U.S. 173, 66 S.Ct. 379, 90 L.Ed. 603, involve the admittedly extensive phrase, production of goods for commerce, quite a different question from what we have here. In Overstreet v. North Shore Corp., 1943, 318 U.S. 125, 63 S.Ct. 494,

The decision of the district court will be affirmed.

BIGGS, Chief Judge (dissenting).

The plaintiff was employed in a department of the defendant Railroad where approximately 325,000 original tracings are on file. These tracings are master prints which cover "all mechanical equipment, cars, locomotives, trains, etc., and all types of structures including bridges, trackage, etc." used or maintained on the defendant's interstate system. Blueprints are made from the master prints. It was the duty of the plaintiff, from time to time, to remove master prints from the files, take them to another employee who would blueprint them, and return them to the files. The blueprints would then be sent to various points.

The majority opinion seems to differentiate between office workers and employees actually engaged in transportation, and also between the relative importance of employees' positions as affecting transportation. Such an interpretation does not seem to be in accordance with the 1939 amendment to the Federal Employers' Liability Act, 45 U.S.C.A. § 51, 53 Stat. 1404. The duties of the plaintiff, like those of everyone else employed in the same department, furthered interstate commerce. It should be noted that a disjunctive "or" follows the first semi-colon of the amendment and, if the statute be read literally, as I think it must, furtherance of interstate commerce suffices to bring an employee within the purview of the amendment: it is not necessary that that employment "directly or closely and substantially" affect interstate commerce. As was pointed out by the Superior Court of Pennsylvania, Scarborough v. Pennsylvania R. Co., 1944, 154 Pa.Super. 129, 132, 35 A.2d 603, 605, the amending language "is very comprehensive, so inclusive indeed that most railroad employes come within its scope." Such a result may be unfortunate but seems to have been the intention of Congress.

I would reverse the judgment of the court below.

87 L.Ed. 656, the Court held that, when construing the "engaged in commerce" clause under the Fair Labor Standards Act, cases interpreting its counterpart under the Federal Employers' Liability Act, before the 1939 amendment, were

helpful. Contrary to appellant's suggestion, we are not required by this holding, when construing the amended Liability Act, to give weight to cases interpreting the "production of goods" phrase under the Fair Labor Standards Act.