REED *v.* PENNSYLVANIA RAILROAD CO.

No. 621. Argued May 1, 1956.—Decided June 11, 1956.

*Joseph S. Lord, III,* argued the cause and filed a brief for petitioner.

*Theodore Voorhees* argued the cause for respondent. With him on the brief were *Philip Price* and *Gordon W. Gerber.*

Mr. Justice Minton delivered the opinion of the Court.

The question we have for decision here is whether petitioner, a clerical employee of respondent railroad, is within the coverage of the Federal Employers' Liability Act. § 1, 35 Stat. 65, as amended, 53 Stat. 1404, 45 U. S. C. § 51. Petitioner is employed entirely in respondent's office building in Philadelphia. Her duties consist of filing original tracings of all of respondent's engines, cars, parts, tracks, bridges, and other structures, from which blueprints of those items are made. There are some 325,000 tracings on file in the office in which petitioner works. Whenever an order for blueprints comes in from anywhere in respondent's system, it is petitioner's responsibility to fill the order by securing the correct tracings from the files. These she takes to the blueprint maker in the same office building. After the blueprints are made, it is petitioner's further duty to return the original tracings to the appropriate file. About 67% of the blueprints so made are sent to points outside Pennsylvania. The files which petitioner attends are the sole depository of the original tracings of the structural details of all of respondent's rolling stock, trackage, and other equipment and installations, and as such represent a fund of documents without which maintenance of the operating system would be impossible.

Petitioner was injured when a cracked window pane in her office blew in upon her. She brought suit for personal injury under the Federal Employers' Liability Act. On respondent's motion to dismiss, the District Court held that petitioner was not within the coverage of § 1 of the Act and, there being no diversity of citizenship between the parties, dismissed the complaint for lack of jurisdiction. The Court of Appeals affirmed. 227 F. 2d 810.

We granted certiorari because of the importance of the question presented in the administration of the Act. 350 U. S. 965.

As originally enacted, § 1 provided that every railroad, "while engaging" in interstate commerce,

> "shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 35 Stat. 65.

A further paragraph was added to the section in 1939, and it is clear that two specific problems which the amendment sought at least to remedy were the results of this Court's holdings that, at the moment of his injury, the employee as well as the railroad had to be engaged in interstate commerce in order to come within the coverage of § 1, and that employees engaged in construction of new facilities were not covered. S. Rep. No. 661, 76th Cong., 1st Sess. 2–3; *Southern Pacific Co.* v. *Gileo,* decided today, *ante,* p. 493. The amendment took the form of an expanded definition of "person . . . employed" in interstate commerce. The amendment reads:

> "Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this Act, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this Act . . . ." 53 Stat. 1404.

No argument is made that Congress could not constitutionally include petitioner within the coverage of the Act. The argument is that the amendment was narrowly drawn to remedy specific evils and that to construe it to include petitioner would amount to inclusion in the Act of virtually all railroad employees—a result which respondent assumes is unintended and undesirable. The argument takes several forms. First, it is said that "commerce" in the Act means only transportation and that petitioner is not employed in transportation. See *Shanks* v. *Delaware, L. & W. R. Co.,* 239 U. S. 556, 559–560. But the interstate commerce in which respondent is engaged is interstate transportation. If "any part" of petitioner's duties is in "furtherance" of or substantially affects interstate commerce, it also is in "furtherance" of or substantially affects interstate transportation. The test for coverage under the amendment is not whether the employee is engaged in transportation, but rather whether what he does in any way furthers or substantially affects transportation. Nor can we resolve the issue presented here in terms of whether or not clerical employees as a class are excluded from the benefits of the statute. The 1939 amendment was designed to obliterate fine distinctions as to coverage between employees who, for the purpose of this remedial legislation, should be treated alike. There is no meaningful distinction, in terms of whether the employee's duties are clerical or not, between petitioner and, for illustration, an assistant chief timekeeper, *Straub* v. *Reading Co.,* 220 F. 2d 177, or a messenger boy carrying waybills and grain orders between separate local offices and freight stations, *Bowers* v. *Wabash R. Co.,* 246 S. W. 2d 535, or a lumber inspector hurt while inspecting ties at a lumber company, *Ericksen* v. *Southern Pacific Co.,* 39 Cal. 2d 374, 246 P. 2d 642—all of whom have been held covered by the 1939 amendment. See also *Lillie* v. *Thompson,* 332 U. S. 459. Nor are the benefits of the

Act limited to those exposed to the special hazards of the railroad industry. The Act has not been so interpreted, and the 1939 amendment specifically affords protection to "any employee" whose duties bring him within that amendment. There is no basis in the language of § 1 for confining liability of the railroad so as to exclude any class of railroad employees as a class. The benefits of the Act are not limited to those who have cinders in their hair, soot on their faces, or callouses on their hands. Section 1 cannot be interpreted to exclude petitioner from its benefits without further consideration of the function she performs and its impact on interstate commerce.

We think that the present petitioner is employed by the respondent in interstate commerce within the meaning of the 1939 amendment to § 1. Although the amendment may have been prompted by a specific desire to obviate certain court-made rules limiting coverage, the language used goes far beyond that narrow objective. It evinces a purpose to expand coverage substantially as well as to avoid narrow distinctions in deciding questions of coverage. Under the amendment, it is the "duties" of the employee that must further or affect commerce, and it is enough if "any part" of those duties has the requisite effect. The statute commands us to examine the purpose and effect of the employee's function in the railroad's interstate operation, without limitation to nonclerical employees or determination on the basis of the employee's importance as an individual in the railroad's organization.

Here respondent railroad has chosen to arrange its operations so that repairs and construction anywhere within its system which require blueprints must go through its Philadelphia office. No such work can be done without recourse to the files of 325,000 original tracings in petitioner's custody. Loss or misplacing of those tracings could promptly cause delay, confusion, or worse in the day-to-day operation of respondent's lines. If all em-

ployees who perform petitioner's duties were removed from service, respondent could not conduct its operations without a change in its organizational system. To recognize this is to attribute to petitioner neither an exaggerated nor an attenuated relationship to respondent's transportation system. The filing of tracings and the dispatch of blueprints taken from them comprise a direct link in the maintenance of respondent's lines and rolling stock. Together with the makers of blueprints, petitioner constitutes the means by which men throughout respondent's system obtain the information they must have to maintain the railroad's trains, equipment, track, and structures.

The very purpose of petitioner's job is to further physical maintenance of an interstate railroad system. Proper performance of her duties makes an obvious contribution to the maintenance of that system. We hold that the petitioner, by the performance of her duties, is furthering the interstate transportation in which the respondent is engaged. "The word 'furtherance' is a comprehensive term. Its periphery may be vague, but admittedly it is both large and elastic." *Shelton* v. *Thomson,* 148 F. 2d 1, 3. Petitioner's duties here come within the confines of that concept.

Similarly, those duties which "in any way directly or closely and substantially affect" interstate commerce in the railroad industry must necessarily be marked out through the process of case-by-case adjudication. This definition and the "furtherance" definition of employment in interstate commerce in the 1939 amendment are set forth in the disjunctive. In some situations they may overlap. Here we hold that, for the reasons already given, performance of petitioner's duties has a close and substantial effect upon the operation of respondent's interstate activities. Cf. *Overstreet* v. *North Shore Corp.,* 318 U. S. 125.

508

Petitioner's duties brought her within the coverage of § 1 as amended, and the District Court therefore had jurisdiction over this suit under the Federal Employers' Liability Act. The judgment below is reversed and the cause remanded to the District Court for further proceedings.

*Reversed.*

MR. JUSTICE BURTON dissents for the reasons stated below in the opinion of the Court of Appeals.

MR. JUSTICE FRANKFURTER, whom MR. JUSTICE REED and MR. JUSTICE HARLAN join, dissenting.

Dissenters are not empowered to define the scope of a decision, but the way they read it may induce dissent. So it is with what the Court has here written. The opinion does not state in terms that the Amendment of August 11, 1939, 53 Stat. 1404, to the Federal Employers' Liability Act of April 22, 1908, 35 Stat. 65, has so drastically changed the limited scope of that Act to those employees of an interstate carrier who are, more or less, directly concerned with its transportation operations as to make it reach all the employees of such interstate carrier whom Congress in the exercise of its constitutional power to regulate commerce may cover. I say the Court does not explicitly hold this, but it does hold that a clerical employee is covered by the terms of the Act because a "part" of her duties is in "furtherance" of interstate commerce. The Court reads the Amendment of 1939 to the Act of 1908 in a merely lexicographical sense. "Furtherance" means anything that furthers or helps forward; the petitioner was certainly charged with tasks that furthered or helped to forward the business of the Pennsylvania Railroad Company, a carrier engaged in interstate commerce; *ergo,* the petitioner, having been injured while "employed by such carrier in such com-

merce," has a right of action under the Amendment to the Employers' Liability Act.

Were the Court to be as explicit as this, it would at least not open the door, as this decision inevitably does, to new litigation. It is not a juristic requirement that decisions be carried to their logical consequences. It is equally true that capricious distinctions should not be made. Yet they are invited when the rationale of a decision is left, if not cloudy, certainly unlimited. For myself, I do not see how the clerical employee here "furthers" the business of the Pennsylvania any more than do all the other clerical employees of the Pennsylvania, and the thousands upon thousands of clerical employees on the various railroads throughout the country, even though there may be differences in salary and hierarchical importance among such employees.

Accordingly, clerical employees and other obviously non-transportation employees of railroads will bring suits under the Federal Employers' Liability Act when recovery thereunder will, by the law of chance, appear to lawyers advising them to be more advantageous than awards obtainable under state workmen's compensation acts. Indeed, if some employees may seek to avail themselves, for one reason or another, of a state workmen's compensation act, a carrier may resist, under the doctrine of *New York Central R. Co.* v. *Winfield,* 244 U. S. 147, by urging the exclusiveness of a remedy under the Federal Employers' Liability Act. Conversely, if suit is brought under that Act, carriers will doubtless resist, as they have in the past, on the ground that the particular clerical employee is not "furthering" its business sufficiently to constitute "furtherance" as intended by the Court in this case. It is not a silly exercise in prophecy to foretell that just as a mass, if indeed not a mess, of cases came before this Court prior to the 1939 Amendment, when the Court gave a much too constricted scope to the Act (see cases

collected in Frankfurter and Landis, The Business of the Supreme Court, pp. 207–208), so a new series of sterile litigation will be stimulated by this decision.

I part company with the Court not in its reading of English but in its assumption that the construction of the Amendment to the Federal Employers' Liability Act is merely a matter of reading English. The Act of August 11, 1939, is the last in a series of consistently developing statutes. As such, it is an organism, projected into the future out of its past. It is not merely a collection of words for abstract annotation out of the dictionary. The process of judicial construction must be mindful of the history of the legislation, of the purpose which infused it, of the difficulties which were encountered in effectuating this purpose, of the aims of those most active in relieving these difficulties. Above all, we should be mindful of the central concern of the body of enactments that constitute the Federal Employers' Liability Act throughout all the vicissitudes of the legislation. It would be redundant to detail these considerations in view of Judge Goodrich's opinion below. 227 F. 2d 810. A few additional observations are pertinent.

Of course, the Act of 1939 sought to remove hindrances that had revealed themselves in subjecting carriers to liability for injuries due to negligence. But the preoccupation of the whole course of this legislation was with protection to those who were peculiarly exposed to injuries because of the nature of their occupation, *i. e.*, the hazardous business of railroading. A very important obstacle to recovery was the doctrine of the assumption of risk as part of the general law of negligence that was made the basis of the federal right. Congress abolished assumption of risk as a defense. See *Tiller* v. *Atlantic Coast Line R. Co.*, 318 U. S. 54. Another great difficulty derived from this Court's construction of the Commerce

Clause whereby it confined application of the Federal Employers' Liability Act to injuries sustained by an employee if at the moment of injury his work was related to interstate transportation. This mode of approach derived from the *Employers' Liability Cases,* 207 U. S. 463, and the *Second Employers' Liability Cases,* 223 U. S. 1, and produced a series of decisions which led Judge Learned Hand to say "The cases are full of casuistry . . . ." *Central R. Co. of New Jersey* v. *Monahan,* 11 F. 2d 212, 213.

I agree with the Court in finding that the "1939 amendment was designed to obliterate fine distinctions"; but they were made by courts only in relation to employees who worked in the context of the hazardous business of transportation. The amendatory legislation was addressed to judicial distinctions affecting these transportation workers that bore no practical relation to the essential conditions of their employment; these distinctions never touched others in a totally different category of employment because the Federal Employers' Liability Act never remotely applied to them. In order to obliterate such "fine distinctions," it is not necessary to jump over the moon and wipe out the basic distinction between those whose duties are tied to transportation, whatever may have been their precise work at the moment of injury, and those employees who are exposed by way of permanent occupation to no greater or different potential hazards than are the thousands upon thousands of like workers in offices other than those of railroads whom Congress has left to remedies under state law. It was on the presupposition of this cardinal distinction between transportation and non-transportation employees of railroads that the Federal Employers' Liability Act was amended in 1939. To make it apply to clerical workers who "further," in a dictionary sense of the term, the interstate

commerce business of railroads would have as much justification, but no more, as it would have for Congress to pass a Federal Employers' Liability Act for all employees who further large enterprises in the conduct of their interstate commerce. The whole course of history of the Federal Employers' Liability Act as well as due regard for the text of the Amendment of 1939, in its entire context, calls for affirmance of the decision below.