James B. JOHNSON, Petitioner,

v.

PACIFIC EMPLOYERS INDEMNITY
COMPANY, Respondent.

No. B-1211.

Supreme Court of Texas.

April 9, 1969.

Horace F. Brown, J. Monty Bray, Houston, for petitioner.

Bryan & Patton, E. H. Patton, Jr., Houston, for respondent.

CALVERT, Chief Justice.

In this suit for benefits under the Workmen's Compensation Law, the trial court's judgment awarded petitioner Johnson a recovery, in a lump sum, of benefits for total and permanent disability, plus medical expenses in the sum of $5,715.00. The court of civil appeals reversed the judgment of the trial court and rendered judgment that Johnson take nothing. Tex.Civ.App., 431 S.W.2d 787. The court of civil appeals held that the evidence establishes, as a matter of law, that Johnson's injuries were not sustained in the course and scope of his employment. The court's holding nullified a jury finding to the contrary. The judgment of the court of civil appeals is reversed and the cause is remanded to that court.

Johnson was employed as a member of a drilling crew by Meadows Drilling Company. The site at which the crew was working was several miles southwest of Johnson's home at Soda, Texas. His usual and most convenient route to the drill-site was southerly along a county road to its intersection with State Highway 146; thence south on State 146 to its intersection with U.S. Highway 90 at Liberty; thence west on U.S. 90 to Dayton; thence west on State Highway 1960, through Humble, to the drill-site. This route will be referred to in this opinion as the "Liberty-Dayton" route. Another route, which Johnson sometimes traveled and which he was traveling when he was injured, runs west from Soda over U.S. Highway 190 to its intersection with U.S. Highway 59 at Livingston; thence south on U.S. 59 to Cleveland; thence west on State Highway 105 to Conroe; thence south on U.S. Highway 75 to its intersection with State Highway 1960; thence west on State 1960 to the drill-site. This route will be referred to as the "Conroe" route.

The Conroe route is shorter than the Liberty-Dayton route, but the Liberty-Dayton route was the more convenient for

Johnson at the time because some seven miles of the Conroe route between Livingston and Cleveland was under construction. It was while traveling along the section of the road under construction on the Conroe route that Johnson was injured when his automobile skidded and turned over.

As is customary in drilling operations, the members of the drilling crew were required to obtain and transport needed water and ice to the drill-site. Meadows furnished the can used for transporting the water and ice, and reimbursed crew members at the end of the month for money expended by them for ice.

When Johnson was employed, Wiggins, who was boss of the drilling operation and lived east of Conroe on State 105, and Nelson and Hopper, two crew members who lived in Conroe, were going to and from work in a car pool. They would pick up water and ice in Conroe. For the first few days of his employment, Johnson took the Liberty-Dayton route to and from work. Then, Wiggins asked him to get into the car pool "to help them get the water and the ice out on the rig," and he agreed to do so. Wiggins had authority to hire and fire members of the crew, and, according to the testimony of one member, "If he told you to do something and you didn't do it * * * he would fire you."

The car pool arrangement was somewhat unique. It was the responsibility of the crew member whose turn it was to drive all the way to the drilling rig to buy the ice and to transport it and the water. Every fourth day was Johnson's day to drive all the way. He would pick up Wiggins east of Conroe, would stop in Conroe to get the ice and water and to pick up Nelson and Hopper, and would then drive south on U.S. 75 to its intersection with State 1960 and west on 1960 to the rig. When it was Wiggins' day to drive, Johnson would drive to Wiggins' home, leave his car there, and ride with Wiggins to Conroe and on to work. On the remaining two days, Wiggins and Johnson would al-

ternate in driving from Wiggins' home to Conroe. On the day before the accident, Johnson had traveled the Liberty-Dayton route. On the day of the accident, it was Johnson's turn to drive all the way to the rig, and he had to make up his mind the night before to take the Conroe route or he would have lost his job. The accident happened before he reached Wiggins' home.

The jury gave an affirmative answer to Special Issue No. 11 inquiring whether it found from a preponderance of the evidence that the injury to Johnson "was sustained in the course and scope of his employment for Meadows Drilling Company." In his charge to the jury, the trial judge defined the phrase, "sustained in the course of employment," in the language used to define it in Section 1, Article 8309, Vernon's Texas Civil Statutes. Further reference will be made to this definition at a later point in this opinion. As a guide to arriving at its answer to the special issue, the court's charge also gave the jury the benefit of the limiting provisions of Section 1b, Article 8309.

The first limiting provision in Section 1b is contained in the first sentence and reads as follows:

"Unless transportation is furnished as a part of the contract of employment or is paid for by the employer, or unless the means of such transportation are under the control of the employer, or unless the employee is directed in his employment to proceed from one place to another place, such transportation shall not be the basis for a claim that an injury occurring during the course of such transportation is sustained in the course of employment. * * *"

Pacific argued strenuously in the court of civil appeals, and insists here, that, on the record before us, a recovery by Johnson is precluded by the foregoing statutory provision. The court of civil appeals did not reach this question.

Johnson's transportation was not furnished or paid for by his employer, and

was not under his employer's control. It follows that the judgment of the court of civil appeals denying a recovery can be based upon the first limiting provision unless the evidence gives rise to a reasonable inference that Johnson had been "directed in his employment to proceed from one place to another place." In Janek v. Texas Employers Insurance Association, 381 S.W.2d 176 (Tex.Sup.1964), we held that an employee, who was required to take a deviated route from his home to his place of work in order to pick up ice to cool the water to be drunk by members of a drilling crew, was, within the meaning and intention of the statute, "directed in his employment to proceed from one place to another place." In that case, we said the direction was implied. In this case, we need not concern ourselves with the matter of an implied direction inasmuch as we are of the opinion that the jury could reasonably infer from the evidence that Johnson was expressly directed by Wiggins to take a deviated route from his home to his place of work. Considering the undisputed testimony that Wiggins had authority to hire and fire members of the drilling crew, and that he would fire anyone who didn't do what he told him to do, we think the jury could reasonably infer that Wiggins' *request* [1] to Johnson to get into the car pool to help get the water and ice to the rig, had the force and effect of a direction.

The court of civil appeals held that a recovery by Johnson was precluded by the second limiting provision contained in the second sentence of Section 1b, which reads:

"  *  *  *  Travel by an employee in the furtherance of the affairs or business of his employer shall not be the basis for a claim that an injury occurring during the course of such travel is sustained in the course of employment, if said travel is also in furtherance of personal or private affairs of the employee, unless the trip to the place of occurrence of said injury would have been made even had there been no personal or private affairs of the employee to be furthered by said trip, and unless said trip would not have been made had there been no affairs or business of the employer to be furthered by said trip."

The quoted provision articulates the so-called "dual-purpose rule." In arriving at its conclusion, the court of civil appeals held that the evidence establishes, as a matter of law, that the reason for Johnson's deviation from his regular route of travel "was personal, that is, for the benefit of the car pool, and not business for the employer, that is, to pick up the ice and water." We do not agree with that holding. Moreover, the holding seems, to some extent at least, to be based upon a misinterpretation or misapplication of the statutory provision. It is not enough to invoke the statutory dual-purpose rule that the employee may have been injured during travel which was of benefit to third persons. Nor may it be invoked when injury occurs during the course of travel which is not in furtherance of the affairs or business of the employer. By the very language of the statute, the rule can only be invoked when injury is sustained during the course of travel which furthers both the affairs or business of the employer and the personal or private affairs of the employee. The holding by the court of civil appeals that Johnson's trip to the place of injury was *not* for the benefit of his employer, and its failure to hold that the trip was in furtherance of Johnson's personal or private affairs, should have precluded decision of the case by that court under the dual-purpose rule. It thus becomes our duty to determine in the first instance whether the dual-purpose rule is applicable to the facts in this case.

As indicated earlier in this opinion, there is evidence in the record that Johnson's only reason for traveling on the deviated route on the day of his injury was to carry

1.  Emphasis ours throughout.

out Wiggins' direction to participate in the car pool and transport ice and water to the drill-site. There is no basis in the record for saying that his personal or private affairs were being furthered by his taking the deviated route to comply with Wiggins' directions. To the contrary, the evidence strongly supports a conclusion that getting to his place of work was the only personal or private affair of concern to Johnson in making the trip to the place of his injury. Our inquiry narrows, then, to whether Johnson's personal or private affair of going to work was being "furthered" by the deviated trip. Unless it was, the dual-purpose rule is not applicable to the facts in this case. This question was not raised or discussed in Janek v. Texas Employers Insurance Association, 381 S.W.2d 176 (Tex. Sup.1964). We merely assumed in that case that the injured employee's personal or private affair of going to work was being "furthered" by the deviated travel. Upon further consideration, we are convinced that we should not have indulged the assumption.

■ In Shelton v. Thomson, 148 F.2d 1 (7th Cir. 1945), the court stated that "the word 'furtherance' is a comprehensive term. Its periphery may be vague, but admittedly it is both large and elastic." That characterization of the word "furtherance" was quoted by Justice Minton in Reed v. Pennsylvania R. Co., 351 U.S. 502 (1956), at 507, 76 S.Ct. 958, 100 L.Ed. 1366. Webster's Third New International Dictionary defines "further" as "promote, advance," and "furtherance" as "advancement, promotion." In construing Section 1, Article 8309, Vernon's Texas Civil Statutes, the Dallas Court of Civil Appeals adopted an earlier Webster's Dictionary definition of "furtherance", i. e., "act of furthering, helping forward, promotion, advancement, or progress," Maryland Casualty Co. v. Smith, 40 S.W.2d 913 (Tex.Civ.App.— Dallas, 1931, no writ). As used in the dual-purpose rule in the phrase "in furtherance of personal or private affairs of the employee," we think the word "furtherance"

connotes the conferring of a benefit on the employee by helping to forward or advance his personal or private affairs; and we do not think that travel by an employee to or from work over a deviated and less convenient route, undertaken only because directed by the employer, is in "furtherance" of the employee's personal or private affair of getting to or from work.

Since Johnson's trip to the place of his injury was not in furtherance of his personal or private affairs, we cannot apply the test provided in the dual-purpose rule in determining whether the evidence supports the jury finding that his injury was sustained in the course of his employment. We yet must decide, however, whether there is evidence in the record to support the jury finding that Johnson's injury was "sustained in the course of his employment" as that phrase is defined in Section 1, Article 8309, Vernon's Texas Civil Statutes. After setting out certain specific injuries which are not included within the definition, the statute continues:

" * * * but shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere."

■ The general rule is that injuries suffered by employees while traveling on public streets and highways in going to and returning from work are not compensable. American General Ins. Co. v. Coleman, 157 Tex. 377, 303 S.W.2d 370 (1957). The rationale of the rule is that such injuries do not grow out of the employment inasmuch as the risks of the travel do not differ from those to which the general public is exposed. Texas General Indemnity Co. v. Bottom, 365 S.W.2d 350 (Tex.Sup. 1963); Smith v. Texas Employers Insurance Association, 129 Tex. 573, 105 S.W.2d 192 (1937). There are many exceptions to

the general rule. See *Coleman*, supra. One of the exceptions is in situations when injury is sustained by an employee during a deviation from his regular or more convenient route of travel to perform a service in furtherance of the affairs or business of his employer. 1 Larson, The Law of Workmen's Compensation, 294.83. The final question to be decided, therefore, is whether there is in the record evidence of probative force that Johnson was traveling on the Conroe route to perform a service in furtherance of his employer's business. Before answering that question, certain additional evidence should be noticed.

■ There is testimony in the record from which a reasonable inference can be drawn that Wiggins wanted Johnson to join the car pool so that he (Wiggins) would have some advance knowledge as to whether or not Johnson would fulfill his ice and water obligation on his appointed day. If Johnson took the Liberty-Dayton route, Wiggins and the other crew members would have no way of knowing whether he would bring ice and water on his appointed day and have it at the rig at the beginning of their tour of duty at 3:00 P.M., or even whether he would come at all. We held in Janek v. Texas Employers Insurance Association, 381 S.W.2d 176 (Tex.Sup.1964), that the transporting of ice to a drilling rig is in furtherance of the employer's business. We now hold that it is also in furtherance of the employer's business that the transportation be under circumstances which will give assurance to the members of the drilling crew that the ice and water will be available at the beginning of the work day. We conclude that there is evidence of probative force in the record to support an inference that Johnson was traveling on the Conroe route at the time of his injury for the purpose of furthering his employer's business.

Summarized, our holdings are that there is evidence of probative force in the record that (1) Johnson was expressly "directed in his employment to proceed from one place to another place," and he is not, therefore, precluded from a recovery by the limiting provisions of the first sentence of Section 1b, Article 8309; (2) Johnson's only personal interest in traveling over the Conroe or deviated route was to get to his place of work, and such travel was not in furtherance of his personal or private affairs; (3) the statutory dual-purpose rule is not applicable in determining whether Johnson was injured in the course of his employment; (4) while traveling over the Conroe or deviated route, Johnson was "engaged in or about the furtherance of the affairs or business of his employer"; and (5) Johnson was injured in the course and scope of his employment.

■ The court of civil appeals sustained Pacific's point of error that there is no evidence in the record to support the jury's finding in answer to issue No. 11 that Johnson's injury was sustained in the course and scope of his employment. We have held the action of the court of civil appeals in that respect to be erroneous. Pacific also had a point of error before the court of civil appeals asserting that the jury's answer to issue No. 11 was contrary to the overwhelming weight and preponderance of the evidence. Ordinarily, we would assume that the court having sustained the no evidence point would also sustain the weight and preponderance point, and on that assumption, we would reverse the judgment of the court of civil appeals and remand the cause to the trial court. Barker v. Coastal Builders, 153 Tex. 540, 271 S.W. 2d 798 (1954). However, where it appears, as in this case, that the court of civil appeals applied a wrong rule of law in deciding the no evidence point, it is our practice, upon reversal, to remand the cause to the court of civil appeals for consideration of the weight and preponderance point. Vasquez v. Meaders, 156 Tex. 28, 291 S.W.2d 926 (1956).

Pacific's brief in the court of civil appeals contains nine other points of error. We are not required on this appeal to consider and decide any of the questions raised by such points because none of the points,

if sustained, would result in affirmance of the court of civil appeals' judgment. The various points, if sustained, would result either in modification and affirmance of the trial court's judgment or reversal of the judgment and remand of the cause for retrial. No useful purpose would be served by our consideration and decision of any of these points if the court of civil appeals should later sustain the weight and preponderance point directed at the jury's answer to issue No. 11. Accordingly, we reverse the judgment of the court of civil appeals and remand the cause to that court for further proceedings not inconsistent with this opinion.